**UNITED STATES of America,
Appellant-Cross Appellee,**

v.

**Gladys Towles ROOT and George A.
Forde, Appellees-Cross Appellants.**

**No. 20360.**

United States Court of Appeals
Ninth Circuit.

Aug. 26, 1966.

Rehearing Denied Oct. 25, 1966.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Donald A. Fareed, Asst. U. S. Atty., Chief Trial Attorney, Los Angeles, Cal., for appellant.

Joseph A. Ball, Joseph D. Mullender, Jr., Ball, Hunt & Hart, Long Beach, Cal., for appellee George A. Forde.

Morris Lavine, Los Angeles, Cal., for appellee Gladys Towles Root.

Before JERTBERG and DUNIWAY, Circuit Judges, and GOODWIN, District Judge.

GOODWIN, District Judge:

A trial, sometimes referred to as a "search for the truth", was held in Unit-

ed States District Court for the Southern District of California, Central Division, resulting in conviction of Joseph Clyde Amsler and John William Irwin for violation of several laws of the United States, one of which was 18 U.S.C. § 1201, which section forbids the interstate transportation of a kidnap victim. This trial started on February 10 and terminated on March 7 of 1964.

The appellees, Root and Forde, were attorneys for Irwin and Amsler and represented them at the trial.

The defendants, Amsler and Irwin, testified in their defense, and it is their testimony and the source of their story that has created the necessity for this decision.

Name familiarity was of some consequence in the trial of defendants Amsler and Irwin.

Frank Sinatra, Jr. was the name of the victim the defendants were accused of kidnapping and transporting interstate, and it was the contention of the defendants Amsler and Irwin that the victim was in fact no victim at all but a willing participant in a scheme that would increase the familiarity of the name by the publicity resulting from the pseudo kidnapping.

It is to be noted that no issue has been raised concerning the name and the distinction between the words "famous" and "notorious".

If the source of the defendants Amsler's and Irwin's story is the basis of the charges made by the Government against the appellees Root and Forde, what claimed conduct on their part was in violation of the laws of the United States?

The function of an indictment by a federal grand jury is to correlate claimed wrongful conduct of the accused with the prohibitions set forth by Congress in its enactment of the criminal laws of the United States.

To test the sufficiency of an indictment by the grand jury returned against appellees Root and Forde and the validity of the order of the District Court dismissing the indictment on motion of the appellees, from which order the United States appeals, the indictment will be dissected and each essential part discussed to determine if it meets the following requirements:

(1) Does it contain the essential elements of the statute?

(2) Is the language clear or is it ambiguous, not readily understood, contradictory or confusing?

(3) Does it adequately advise the appellees of the nature of the crime with which they are charged so they may defend against it?

## COUNT ONE
### [18 U.S.C. § 371]

1. That on or about December 14, 1963, within the Southern District of California, Barry W. Keenan, Joseph Clyde Amsler and John William Irwin were arraigned before United States Commissioners on a complaint filed that date which charged Barry W. Keenan and Joseph Clyde Amsler, aided and abetted by John William Irwin, with the interstate transportation of a kidnap victim, Frank Sinatra, Jr., in violation of 18 U.S.C. §§ 2, 1201.

2. That on or about January 2, 1964, a Grand Jury of the United States of America, sworn in as the September 1963 Grand Jury in the United States District Court for the Southern District of California, returned a six-count indictment (33087–CD) charging Barry W. Keenan, Joseph Clyde Amsler and John William Irwin in each count as follows:

a. COUNT ONE: charged conspiracy: to transport kidnap victim, Frank Sinatra, Jr., in interstate commerce in violation of 18 U.S.C. § 1201; to transmit interstate ransom communications in violation of 18 U.S.C. § 875(a); and to possess ransom money from an interstate kidnapping in violation of 18 U.S.C. § 1202; all in violation of 18 U.S.C. § 371.

b. COUNT TWO: charged the interstate transportation of kidnap victim, Frank Sinatra, Jr., and aiding and abetting said violation in violation of 18 U.S.C. §§ 2, 1201.

c. COUNTS THREE through FIVE, inclusive: charged separate transmissions in interstate commerce of ransom communications, and aiding and abetting said violation, in violation of 18 U.S.C. §§ 2, 875(a).

d. COUNT SIX: charged the possession of ransom money from the interstate kidnapping of Frank Sinatra, Jr., in violation of 18 U.S.C. § 1202.

3. On January 6, 1964, Barry W. Keenan, Joseph Clyde Amsler and John William Irwin were arraigned on said indictment in the United States District Court for the Southern District of California.

4. Between January 6, 1964 and February 10, 1964, pretrial motions were made, heard and ruled upon, and Barry W. Keenan, Joseph Clyde Amsler and John William Irwin pleaded not guilty to each and every count in the indictment, all in the United States District Court for the Southern District of California.

5. On February 10, 1964, jury trial on the above-said indictment commenced, and on March 7, 1964, the said jury trial concluded; all in the United States District Court for the Southern District of California.

6. Beginning on or about December 15, 1963 and continuing to at least March 7, 1964, defendant GLADYS TOWELS ROOT, an attorney at law, represented John William Irwin in the above proceedings.

7. Beginning on or about December 15, 1963 and continuing to at least March 7, 1964, defendant GEORGE A. FORDE, an attorney at law, represented Joseph Clyde Amsler in the above proceedings.

8. Beginning on or about December 14, 1963 and continuing to on or about March 7, 1964, defendant GLADYS TOWLES ROOT, defendant GEORGE A. FORDE and unindicted co-conspirators Barry W. Keenan, Joseph Clyde Amsler and John William Irwin agreed, confederated and conspired together to defraud the United States and to commit offenses against the United States, to-wit:

a. To corruptly endeavor to influence, intimidate, and impede witnesses in the discharge of their duties as witnesses in the United States District Court for the Southern District of California in Case 33087–CD, in violation of 18 U.S.C. § 1503;

b. To suborn perjury in the United States District Court for the Southern District of California in Case 33087–CD, in violation of 18 U.S.C. § 1622;

c. To commit perjury in the United States District Court for the Southern District of California in Case 33087–CD, in violation of 18 U.S.C. § 1621;

d. To corruptly influence, obstruct and impede and endeavor to influence, obstruct and impede the due administration of justice in the United States District Court for the Southern District of California in Case 33087–CD, in violation of 18 U.S.C. § 1503.

The primary object of said conspiracy was to obtain an acquittal by improper and unlawful means for the unindicted co-conspirators, Barry W. Keenan, Joseph Clyde Amsler and John William Irwin, in Case 33087–CD.

It was part of said conspiracy that unindicted co-conspirators, Joseph Clyde Amsler and John William Irwin, would take the witness stand and testify in their own behalf.

It was part of said conspiracy that unindicted co-conspirators, Joseph Clyde Amsler and John William Irwin, would be instructed to testify falsely and would testify falsely in the following material subjects:

a. That Frank Sinatra, Jr. knew beforehand that he was to be kidnapped;

b. That the kidnapping of Frank Sinatra, Jr. was planned by people "higher up" than Barry W. Keenan;

c. That the kidnapping of Frank Sinatra, Jr. was a publicity stunt and a hoax;

d. That there was a person named "Wes" or "West" who was involved in planning the kidnapping of Frank Sinatra, Jr.;

e. That they were to be caught by law enforcement personnel; and

f. That once they were caught they would conduct themselves as if they had really kidnapped Frank Sinatra, Jr. and not reveal that it was a hoax and publicity stunt.

It was further part of said conspiracy that they would convey and publish the false information that the charged crimes were arranged as a publicity stunt and hoax by and on behalf of Frank Sinatra, Jr.

The defendants and the unindicted co-conspirators are said to have committed numerous overt acts in furtherance of said conspiracy and to effect the objects thereof, in the Central Division of the Southern District of California. Some eighteen overt acts of appellees are alleged.

Title 18 U.S.C. § 371 is commonly known as the conspiracy statute. It reads in part:

> "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

▇▇▇▇ In expressing themselves, the grand jury, with some help from the United States Attorney, charged the appellees with a violation of the quoted portion of 18 U.S.C. § 371, but did not reach the language of the statute until No. 8. All of the descriptive material that precedes the language of the statute may be subject to a motion to strike at the instance of the appellees but surplusage is not fatal. Ford v. United States, 273 U.S. 593, 602, 47 S.Ct. 531, 71 L.Ed. 793 (1927). Words that are employed in an indictment that are descriptive of that which is legally essential to the charge in the indictment cannot be stricken out as surplusage. But-

ler v. United States, 10 Cir., 20 F.2d 570. Obviously all matters set forth in the indictment prior to paragraph 8 are descriptive. Whether or not it was essential to describe the proceedings to lay a foundation for the allegations that follow is not material. Paragraph 8 uses the language of the statute and if it is ambiguous, it is a congressional ambiguity that has lasted since its enactment and withstood many and varied attacks. Having alleged a conspiracy, the indictment in subparagraph a. under paragraph 8 charges a violation by appellees of 18 U.S.C. § 1503. The statutory language is in part:

> "Whoever corruptly * * * influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

Subparagraph a. is identical to 18 U.S.C. § 1503.

Paragraph 8b. charges a violation of 18 U.S.C. § 1622, which reads:

> "Whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined not more than $2,000 or imprisoned not more than five years, or both."

It is obvious that the charge in subparagraph b. in the indictment follows the language of the statute. The same may be said for subparagraph c. which charges a violation of 18 U.S.C. § 1621. This section provides:

> "Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more

than $2,000 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States. June 25, 1948 c. 645, 62 Stat. 733; Oct. 3, 1964, Pub.L. 88–619, § 1, 78 Stat. 995."

The allegation complies with the requirement that it be concise and easily understood.

Subparagraph d. restates 18 U.S.C. § 1503.

The indictment sets forth the alleged objective of the conspiracy and the manner in which it was to be attained.

If the story of the defendants that the "kidnap victim" was in fact "not a victim" was believed by a trial jury, no other conclusion could have been reached than that an acquittal would have resulted, and it cannot be seriously contended that an acquittal of an accused because of perjury is countenanced in the law.

■ A conspiracy indictment must allege an unlawful purpose. That is not enough; the indictment must go further, and in this instance it does. There are eighteen overt acts set forth, and in each instance, one or the other of the appellees is charged with making a telephone call to, or having a meeting with, some person or persons in the furtherance of the unlawful design.

Appellee Root attacked the sufficiency of this count of this indictment on the following grounds:

(1) That a similar indictment had been dismissed by the United States District Court, from which order no appeal was taken, and therefore, the previous order was *res judicata* as to this second and superseding document.

(2) That the count is prolix, ambiguous and confusing and therefore the accused, the court and the jury are not properly informed.

(3) That Rule 7(c) of the Federal Rules of Criminal Procedure requiring "plain, concise and definite written statements of the essential facts constituting the offense charged" has been violated and requires its dismissal.

(4) That false testimony which was the object of the conspiracy must be set forth and that its materiality must be shown.

(5) That appellee Root is of the feminine gender as well as an attorney at law, and can have a determination of the invalidity of the indictment on the grounds that lawyers were systematically excluded from the grand jury that returned the indictment.

*A fortiori* women lawyers suffered the same fate.

The District Court, by memorandum opinion, gave point four as ground for granting appellees' motion to dismiss the indictment.

In its memorandum opinion, the court had this to say:

"While the indictment is thus cast in five counts, it is apparent that the gravamen of the offenses charged is that the defendants induced Amsler and Irwin to testify falsely concerning matters which are described only by subject matter in Counts I, IV and V, which false testimony may, or may not, be scattered somewhere among the 745 questions and answers that are contained in Counts II and III or somewhere else in the 4500 pages of the Transcript of the evidence of the trial in Case No. 33087–CD."

It is apparent that the ruling as to Count One was predicated on the fact that it was incumbent upon the Government to set forth the claimed false testimony. In this conclusion, the District Court erred.

The answer to appellees' contention may be put in the hypothetical.

Assume that the conspirators discussed the corrupt proposal with the defendant witnesses who refused to entertain it by exercising their right to refuse to testify? If the lower court ruling were correct, in that event a charge of conspiracy to suborn perjury would be fatally defective because the object of

the conspiracy had not been accomplished and could not be alleged.

■■ Title 18 U.S.C. § 371 does not require "mission accomplished", only "mission attempted". An overt act by the conspirators in an effort to accomplish the mission satisfies the requirement of the statute.

■ There is no merit in the contention that the order dismissing Count One of the indictment was an adjudication of a fact that precluded the filing of a superseding indictment, and the contention that it is *res judicata* is untenable.

■ The remaining contentions of appellee Root do not require discussion.

The appellee Forde's claim that the false testimony was not alleged in Count One is identical with that of the appellee Root and has been answered.

Appellee Forde has injected a new element in oral argument not contained in his brief.

He urges that an attorney in counseling his client has latitude in aiding the client in the presentation of the client's story at trial time.

■ Quaere: Does this attorney-client relationship permit the client to relate a story manufactured by the attorney as Count One of this indictment charges?

Answer: No.

Count Two is in the language of the statute.

## COUNT TWO

### [18 U.S.C. § 1622]

1. The Grand Jury hereby realleges and incorporates by reference paragraphs one through seven of Count One.

■ 2. Beginning on or about December 14, 1963, and continuing to on or about March 4, 1964, within the Central Division of the Southern District of California, defendants GLADYS TOWLES ROOT and GEORGE A. FORDE knowingly procured, induced, instigated and suborned Joseph Clyde Amsler to knowingly commit perjury, in that, on March 2 and 3, 1964, said Joseph Clyde Amsler, having duly taken an oath before a competent tribunal, namely, the United States District Court, Southern District of California, in Case No. 33087–CD then pending before said Court, a case in which a law of the United States authorized an oath to be administered, that he would testify truly, did willfully and contrary to said oath testify to material matters which he did not believe to be true * * *.

The testimony of the defendant witness need not be recited.

It is enough to say that it is elicited by the questioning of the appellees Forde and Root.

The indictment contains a number of separate references to the testimony contained in the reporter's transcript.

What the defendant witness could have said in a paragraph or two is embellished and it is assumed that the manner of relating the story had a two-fold purpose; to hold the listener's interest and to be convincing.

It is prolix as is contended by appellee Root.

It purports to be a documentary of the facts. The time, the place, the people present—all are necessary to the theme. In each instance and at the conclusion of that portion of the witness' answers set forth by the indictment, it is charged that the events related were not a documentary but a novel.

Ambiguity is ascribed to the manner in which the indictment attacks the character of the testimony, ambiguity to the extent that the appellees are not informed of the exact language used by the defendant witness when uttering the claimed perjury. To answer this contention, the charge is quoted:

"And said testimony was false and contrary to the oath taken by Joseph Clyde Amsler as Amsler, defendant ROOT and defendant FORDE then and there well knew and believed in that: At said time and place, mid-October, 1963, at Castellammare, Los Angeles, California, Barry W. Keenan

**384**

did not tell Joseph Clyde Amsler that the person that was to be the victim [Frank Sinatra, Jr.] of this 'operation' was to know of it beforehand; nor was there any conversation that Keenan would tell Amsler something that Keenan shouldn't tell Amsler and that Amsler was not to repeat it (namely, that the 'victim of the operation was to know about it beforehand'); nor was there any conversation that 'Frank Sinatra, Jr., was—had already known—does already know that this (the kidnapping) was supposed to take place' nor was there any reference to 'higher-ups'; nor was there any conversation about Amsler 'and everybody he (Keenan) had in it with him' were to 'think of it as a legitimate crime'; nor was there any conversation about not divulging that they 'knew anything about who was behind it.' And the aforesaid testimony was material to the issues of guilt or innocence as framed by the indictment and the pleas of not guilty entered by all the defendants in Case No. 33087–CD."

Does Count Two offend Section (c) of Rule 7 of the Rules of Criminal Procedure? The first sentence of Rule 7(c) provides:

"(c) Nature and Contents. The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * * It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice."

The language of the indictment is readily understood without the use of Webster.

If it is definite, where does the ambiguity lie? A careful search for contradictory statements is not revealing.

It is prolix, but the fact that the claim is extensive because the recitations of the witness are extensive does not offend the rule. If a witness is believed to have testified falsely in one hundred particulars, is there any valid reason why the charge in the indictment should be limited to a fewer number?

If the grand jury finds probable cause, it is not only its right but its duty to include all instances in the indictment in which it believes the offender may have transgressed. The court erred in dismissing Count Two.

Count Three differs from Count Two in only one respect. Appellees are charged with suborning the defendant witness Irwin to commit perjury.

Appellees are critical of Counts Four and Five claiming that the exact language of the defendant witness must be alleged rather than the conclusion derived by the pleader that the defendant witness claimed prior knowledge by the victim of the abduction. Counts Four and Five allege:

### COUNT FOUR
[18 U.S.C. § 1503]

1. The Grand Jury hereby realleges and incorporates by reference paragraphs one through seven of Count One.

2. Beginning on or about December 14, 1963 and continuing to on or about March 7, 1964 in Los Angeles County, California, within the Central Division of the Southern District of California, defendants GLADYS TOWLES ROOT and GEORGE A. FORDE unlawfully,

willfully, and knowingly, did corruptly endeavor to influence, intimidate, and impede a witness, Joseph Clyde Amsler, in Case 33087–CD by inducing, commanding, requesting and having the said Joseph Clyde Amsler knowingly testify falsely and contrary to his oath as a witness on the following material subjects:

a. That Frank Sinatra, Jr. knew beforehand that he was to be kidnapped.

b. That the kidnapping of Frank Sinatra, Jr. was planned by people "higher up" than Barry W. Keenan.

c. That the kidnapping of Frank Sinatra, Jr. was a publicity stunt and a hoax.

d. That there was a person named "Wes" or "West" who was involved in planning the kidnapping of Frank Sinatra, Jr.

e. That they were to be caught by law enforcement personnel.

f. That once they were caught they would conduct themselves as if they had really kidnapped Frank Sinatra, Jr. and not reveal that it was a hoax and publicity stunt.

### COUNT FIVE
#### [18 U.S.C. § 1503]

1. The Grand Jury hereby realleges and incorporates by reference paragraphs one through seven of Count One.

2. Beginning on or about December 14, 1963 and continuing to on or about March 7, 1964 in Los Angeles County, California, within the Central Division of the Southern District of California, defendants GLADYS TOWLES ROOT and GEORGE A. FORDE unlawfully, willfully and knowingly, did corruptly endeavor to influence, intimidate, and impede a witness, John William Irwin, in Case 33087–CD by inducing, commanding, requesting and having the said John William Irwin knowingly testify falsely and contrary to his oath as a witness on the following material subjects:

a. That Frank Sinatra, Jr. knew beforehand that he was to be kidnapped.

b. That the kidnapping of Frank Sinatra, Jr. was planned by people "higher up" than Barry W. Keenan.

c. That the kidnapping of Frank Sinatra, Jr. was planned by people "high-hoax.

d. That there was a person named "Wes" or "West" who was involved in planning the kidnapping of Frank Sinatra, Jr.

e. That they were to be caught by law enforcement personnel.

f. That once they were caught they would conduct themselves as if they had really kidnapped Frank Sinatra, Jr. and not reveal that it was a hoax and publicity stunt.

It is sometimes difficult to define the difference between pleading a conclusion and the ultimate fact.

If a statement is made from which only one conclusion can reasonably follow and that conclusion is pleaded in the indictment, can it be said that the allegation is ambiguous or misleading?

In the testimony reported at trial time, the following occurred:

(Question by appellee Root)

"Q. What did he say in this regard purely as to principals?"

(Answer by defendant witness Amsler)

"A. He said that after I had coaxed him for awhile to try and find out more about the story, he said that Frank Sinatra, Jr. was—had already known—does already know that this was supposed to take place." [1]

(Questions by the prosecutor; answers by Amsler)

"Q. At that time when you left Barry Keenan after that trip in the mountain, did you leave with any sort of a feeling that there was somebody else behind Barry Keenan pulling the strings regarding these plans?

"A. Yes, sir.

"Q. You left with that feeling?

"A. Yes, sir.

---

1. Reporter's transcript in Case No. 33087–CD, page 3000, line 15, through page 3007, line 10.

"Q. What did you base that feeling on?

"A. He told me that—that Junior was supposed to know about it beforehand, and that he had mentioned that it was—it was all arranged like a syndicate thing. You know, a lot of people in it.

"Q. All right. Let's take it in sequence. Was this conference—what is said just before Mr. Keenan said, 'Junior is supposed to know about it beforehand'?

"A. I had been telling him that it was a crazy stunt and everything, and I didn't—I couldn't understand him going for a thing like this. And he said, 'Well, if things—' that I didn't know about it and he couldn't tell me. And I finally persuaded him to tell me that it was an inside job.

"Q. Was that the language Barry Keenan used? Did he say it was an inside job?

"A. I don't recall the exact language. I'm not even sure if—all I remember drawing from it is I remember that he told me that Frank Sinatra, Jr. was to know about it beforehand and that—"[2]

Counts Four and Five allege the conclusion that Frank Sinatra, Jr. knew beforehand that he was to be kidnapped. What other conclusion can be drawn from the witness' testimony than that alleged by the indictment?

If appellee Root asked the question, she must have heard the answer.

The indictment could not be more specific. Its language is an adequate substitute for a halting, poorly constructed sentence that can have only one meaning.

The record is replete with questions and answers that fit this pattern and it is the better practice to use the clearer form. United States v. Perlstein (3 Cir. 1942), 126 F.2d 789.

Reversed.

---

2. Reporter's transcript in Case No. 33087–CD, page 3231, line 6, through page 3232, line 24.