**UNITED STATES of America,
Plaintiff-Appellee,
v.
Harry Ernest MEEKER,
Defendant-Appellant.**

**No. 74–1247.**

United States Court of Appeals,
Ninth Circuit.

**Dec. 5, 1975.**

---

Raymond E. Sutton (argued), Las Vegas, Nev., for defendant-appellant.

Richard Wright, Asst. U. S. Atty. (argued), Las Vegas, Nev., for plaintiff-appellee.

## OPINION

Before HUFSTEDLER, WALLACE and KENNEDY, Circuit Judges.

WALLACE, Circuit Judge:

Meeker appeals from his conviction, after a jury trial, on three counts of interfering with flight crew members in performance of their duties in violation of 49 U.S.C. § 1472(j) and one count of assault in violation of 18 U.S.C. § 113. We affirm.

Meeker was a passenger on a National Airlines non-stop flight from Miami, Florida, to San Francisco, California. He had several alcoholic drinks prior to the flight and after departing Miami, left his seat, made bizarre remarks to a female passenger and later began hitting another passenger sitting directly behind him. In response to the reported altercation, the co-pilot entered the cabin from the cockpit to investigate, observed Meeker arguing with another passenger in the aisle and instructed both men to return to their seats. Meeker refused to be seated and struck the co-pilot who thereafter returned to the cockpit.

Meeker then struck an off-duty flight engineer. Thereafter another fight started between Meeker and the person with whom he earlier argued in the aisle. Meeker was wrestled to the floor where the pilot, who had come from the cockpit, and passengers subdued him and strapped him down. The pilot decided to divert the plane and to land at Las Vegas, Nevada, where Meeker was taken into custody.

Meeker raises several challenges to each count of his conviction. However, he was given concurrent prison sentences on each count and in addition was fined $2,500 on the first count. Under the concurrent sentence rule, we need address only the first count which pertains to interference with the pilot. *United States v. Tucker*, 435 F.2d 1017, 1019 (9th Cir. 1970), *cert. denied*, 401 U.S. 976, 91 S.Ct. 1197, 28 L.Ed.2d 325 (1971).

■ Meeker first alleges that 49 U.S.C. § 1472(j)[1] is a specific intent, rather than a general intent, crime and that the district court, therefore, erred in refusing an instruction on the defense of voluntary intoxication. We disagree.

By its language, section 1472(j) applies to anyone who "assaults, intimidates, or threatens . . . *so as to* interfere with the performance" of duties. (Emphasis added.) If Congress had intended to legislate a specific intent crime, the statute probably would have said "with the intent to" interfere rather than "so as to" interfere. The wording of the statute does not require a specific intent to interfere with the performance of the crew.

Moreover, the goal which Congress sought in this provision of the statute was to deter the commission of crimes which, if committed on the terrain below, might be considered relatively minor, but when perpetrated on an aircraft in flight would endanger the lives of many. H.R.No.958, 87th Cong., 1st Sess. (1961), *reprinted in* 1961 U.S.Code Cong. & Admin.News, pp. 2563, 2565. The primary danger to be averted is not the formation of a specific intent to interfere with aircraft operations but the criminal act of an assault, intimidation or threat upon airline personnel during flight. We therefore construe section 1472(j) as a general intent crime, in harmony with the statutory purpose of safeguarding flight personnel from any statutorily described acts which would interfere with their efficient functioning. *Id.* at 2570.[2]

■ Voluntary intoxication is not a defense to a crime of general intent. *Kane v. United States*, 399 F.2d 730, 736 (9th Cir. 1968), *cert. denied*, 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969). Thus, the district court gave the proper intent and voluntary intoxication instructions.

1. 49 U.S.C. § 1472(j) provides:

Whoever, while aboard an aircraft within the special aircraft jurisdiction of the United States, assaults, intimidates, or threatens any flight crew member or flight attendant (including any steward or stewardess) of such aircraft, so as to interfere with the performance by such member or attendant of his duties or lessen the ability of such member or attendant to perform his duties, shall be fined not more than $10,000 or imprisoned not more than twenty years, or both. Whoever in the commission of any such act uses a deadly or dangerous weapon shall be .imprisoned for any term of years or for life.

2. We do not agree with the approach suggested in *United States v. Greene*, 497 F.2d 1068, 1086 (7th Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975) (dictum). Greene attempted to hijack a commercial passenger aircraft in flight. Although the co-pilot was allowed to assist in landing the aircraft, he spent the remainder of the flight in the cabin attempting to talk Greene into modifying his demands. In upholding inconsistent verdicts of conviction under section 1472(i) (air piracy) and acquittal under section 1472(j) (interference), the court said:

We also find some merit in the Government's contention that the verdicts are not necessarily inconsistent since the jury could have found that although Greene exercised control over the aircraft, he did not interfere with the flight crew in that the plane went to the scheduled destination and crew members were not prevented from performing their normal duties.

*Id.* We feel, however, that when a defendant participates in proscribed conduct and causes a crew member to lose his autonomy over doing what would ordinarily be his duty, a violation of section 1472(j) has occurred.

■ Meeker challenges the ruling by the trial court in treating certain language as surplusage. Count I in the indictment and the subsequently filed complaint originally alleged narrower facts than necessary under the statute, stating that Meeker "did intimidate . . . the pilot . . . so as to interfere with the performance . . . of his duties *in controlling said aircraft . . . .*" (Emphasis added.) Meeker charges that interference with control of the aircraft was not shown by the evidence. The district court chose to disregard the italicized words as surplusage but Meeker contends that descriptive conduct is not surplusage, relying on our decision in *United States v. Root,* 366 F.2d 377 (9th Cir. 1966), *cert. denied,* 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 784 (1967). His reliance is misplaced. In *Root* we stated: "Words that are employed in an indictment that are descriptive of that which is legally essential to the charge in the indictment cannot be stricken out as surplusage." *Id.* at 381. In this case, all elements of the statute are present without the unessential phrase "in controlling said aircraft."

■ The sufficiency of the evidence for Count I is attacked by contending that Meeker did not directly intimidate the pilot. The possible ramifications of this argument raise a difficult issue of some significance. One could conjure up the spectre of the government's employing a section 1472(j) charge for acts which would normally be considered assaults on passengers proscribed under section 1472(k)(1). This would escalate an act normally punishable by imprisonment up to six months and a fine not to exceed $500 to a possible penalty of up to 20 years in prison and a $10,000 fine. The contention might warrant careful scrutiny were this a case of a pilot unnecessarily sauntering back to the cabin to intermeddle officiously in a heated dispute between passengers. Meeker's case, however, presents no such troublesome scenario.

The pilot initially left the cockpit to assess the riotous conditions that the co-pilot and stewardesses had reported to him. The normally sedate DC–10 passengers and flight attendants were standing up and screaming, with some shouting "kill him [Meeker]!" One casualty had already been stretched out across some seats. Upon entering the cabin the pilot saw Meeker menacingly rising up out of his seat, despite the efforts of three men to contain him. Meeker followed by knocking his wife into the pilot's direction. The pilot responded by searching for a restraining device in the cockpit. He returned with the co-pilot's belt and, with the aid of many passengers, managed to strap Meeker down. The pilot had to proceed with caution in order to avoid getting hurt as Meeker was kicking and flailing out in all directions, while spewing forth a stream of threatening invectives. The testimony of the pilot indicated that he was frightened by the unprecedented flight conditions and feared for the safety of all those on board.

■ It may be conceivable to conclude on the basis of the evidence that Meeker did not "directly" intimidate the pilot in a one-to-one type of confrontation. Such a conclusion, if made, however, would not foreclose our inquiry. One person in a group can be intimidated by threats directed at the group in general. Nor is proof that the victim was in fact frightened for his own physical safety required in order to find that a defendant performed the criminal act of intimidation. It is sufficient that the conduct and words of the accused would place an ordinary, reasonable person in fear. *United States v. Alsop,* 479 F.2d 65, 66–67 (9th Cir. 1973) (construing "intimidation" in the bank robbery statute, 18 U.S.C. § 2113(a); *accord, United States v. Jacquillon,* 469 F.2d 380, 385 (5th Cir. 1972), *cert. denied,* 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973).[3]

*Mims v. United States,* 332 F.2d 944 (10th Cir.), *cert. denied,* 379 U.S. 888, 85

---

**3.** These cases formulated an objective test where intimidation is placed on the same footing as "force and violence" under 18 U.S.C.

§ 2113(a). Section 1472(j) places intimidation in an equivalent position to "assaults" or "threats." We recognize that assault and

S.Ct. 158, 13 L.Ed.2d 92 (1964), is not contrary to our construction of intimidation. Mims had opened a sliding door on a small airplane, causing the pilot to land prematurely. After Mims aborted the first landing attempt by briefly taking over the dual panel controls, he then turned the ignition key off, thus necessitating a "dead stick" landing. No threats were verbalized directly towards the pilot; nevertheless, Mims' conviction for interference under section 1472(j) was upheld.

In determining whether there is sufficient evidence of intimidation in Count I, we must look to the totality of the circumstances. Viewing the evidence in the light most favorable to the government, as we must, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Mayes,* 524 F.2d 803 (9th Cir. 1975), the evidence shows that Meeker intimidated the pilot and thus interfered in the performance of his duties by causing him to leave the cockpit to subdue Meeker and to divert the aircraft to Las Vegas for the protection of the plane and passengers.

Meeker's remaining contentions do not merit our written consideration.

Affirmed.

threat may well be of a lower order of dangerousness than force or violence. However, sections 2113(a) and 1472(j) both authorize sentences of up to 20 years. Thus, we have no hesitancy in applying the test for intimidation under section 2113(a) when interpreting section 1472(j).