**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                    No. 02-4463

MORDHAI GILADY,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-02-1-A)

Argued: January 22, 2003

Decided: April 9, 2003

Before WIDENER and GREGORY, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Gregory Bruce English, ENGLISH & SMITH, Alexandria, Virginia, for Appellant. Mark Alex Grider, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Mordhai Gilady was convicted of violating 49 U.S.C. § 46504, interfering with flight crew and attendants. District Court Judge Leonie Brinkema of the Eastern District of Virginia sentenced Gilady to two years of supervised probation and ordered him to pay $2,799.02 in restitution to Delta Airlines. On appeal, Gilady argues that there is insufficient evidence in the record to sustain his conviction.* For the reasons that follow, we affirm his sentence.

I.

On November 11, 2001, Gilady boarded a Delta flight in Orlando, Florida, en route to New York's La Guardia Airport. Kyle Marie Thompson, a flight attendant on the Delta flight, showed Gilady to his seat, at which time Gilady became agitated and annoyed, stating that he would not sit in his assigned seat. Although it was not clear at the time of the incident, Gilady testified that he wanted to change his seat because he was experiencing severe pain and swelling in his leg because of an old injury. At Gilady's trial, Thompson testified that Gilady began pacing in the aisle and refused to comply with Thompson's request that he be seated. Gilady asked to speak with Jayne Whyte, the head flight attendant on the Delta flight. Whyte left her position in first-class to speak with Gilady, who, according to Whyte, was "very angry" and yelled at her to change his seat. At one point during her encounter with Gilady, Whyte raised her hands in self-defense because she felt that Gilady was "getting a little bit too close to [her]." At Gilady's criminal trial, both Whyte and Thompson testi-

---

*During oral argument, Gilady abandoned as moot his argument that the district court improperly ordered him to pay restitution to Delta Airlines. Thus, the only issue on appeal is whether there is sufficient evidence in the record to sustain his conviction.

fied that during their respective encounters with Gilady on the Delta flight, Gilady stood three to six inches from each of them and yelled at them both; that Gilady's behavior was intimidating to them both; and that because of his conduct during the flight, they were unable to complete their respective in-flight duties. However, both Whyte and Thompson testified that Gilady did not strike or threaten to strike either of them.

James Decker, a police lieutenant from Bloomfield, New Jersey, was a passenger on the Delta flight. At trial, Decker corroborated Whyte's and Thompson's account of Gilady's behavior. Decker testified that Gilady yelled at Thompson and Whyte, using extreme profanity. According to Decker, Gilady "got into the face of [one] of the [flight attendants]" and told her that he wanted to get off the plane. Because Decker believed that Gilady "was threatening a stewardess and threatening [his] life as well as anyone else's [on the flight]," he sat next to Gilady until the plane landed at Dulles International Airport in Washington, D.C. At Dulles, Gilady was arrested and subsequently indicted for violating 49 U.S.C. § 46504, interfering with flight crew and attendants.

At the end of Gilady's one-day bench trial on June 7, 2002, Judge Brinkema convicted Gilady of interfering with the Delta flight crew and attendants. She sentenced Gilady to two years of supervised release and ordered him to pay restitution to Delta airlines and a mandatory special assessment of one hundred dollars. At his sentencing, Judge Brinkema explained that "although [she] was satisfied that [Gilady] internally did not intend to injure or scare anybody . . . that [his] behavior in the context of . . . post-September 11 created a reasonable basis in the minds of those around [Gilady] that they were at risk from [him]." Gilady then filed this appeal, challenging the sufficiency of the evidence supporting his conviction.

## II.

In an appeal from a bench-trial verdict in a criminal case, this Court must examine whether "'there is substantial evidence, taking the view most favorable to the government,' to support the conviction." *United States v. Ismail*, 97 F.3d 50, 55 (4th Cir. 1996) (internal citation omitted).

III.

49 U.S.C. § 46504 sets forth the elements of the crime of interfering with flight crew and attendants. Section 46504 states in relevant part:

> An individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, shall be fined under Title 18, imprisoned for not more than 20 years, or both. . . .

49 U.S.C. § 46504. Thus, in order to sustain a conviction under this statute, the government must prove that Gilady: (1) interfered with, or lessened the ability of the Delta flight attendants to perform their respective duties on the Delta flight by; (2) assaulting or intimidating them. The parties do not dispute that Gilady's conduct interfered with the ability of Thompson and Whyte to complete their respective in-flight tasks. To this point, both flight attendants testified that they were unable to complete their respective duties during the flight because of Gilady's behavior. Thus, the issue is whether there is sufficient evidence that Gilady intimidated or assaulted the Delta flight attendants.

In his appeal, Gilady contends that while his conduct during the Delta flight was "inappropriate, obnoxious, and rude," his behavior did not rise to the level of being assaultive or intimidating as required to sustain his conviction under § 46504. For the following reasons, we disagree.

We do not find that Gilady assaulted Whyte or Thompson. Indeed, both flight attendants testified that Gilady did not touch or threaten to strike either of them. After reviewing the record evidence, however, we do conclude that Gilady intimidated Thompson and Whyte within the meaning of § 46504.

In order to prove intimidation within the meaning of § 46504, "it is sufficient that the conduct and words of the accused would place

an ordinary, reasonable person in fear." *United States v. Meeker*, 527 F.2d 12, 15 (9th Cir. 1975) (interpreting the predecessor statute to § 46504). In this case, both Whyte and Thompson testified that Gilady's behavior, i.e., yelling at them while standing three to six inches away, was intimidating and that they were scared that there would be a physical altercation. Given the heightened awareness after September 11th and the flight attendants' testimony that they were frightened by Gilady's *conduct*, this Court concludes that there is sufficient evidence in the record to support a finding that a reasonable person would have been placed in fear by Gilady's conduct during the Delta flight.

## IV.

Because we conclude that Gilady intimidated the flight attendants within the meaning of § 46504, we affirm Gilady's conviction and sentence.

*AFFIRMED*