**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jeff BRICE, Jr., Defendant–Appellant.**

**No. 89-50618.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1990.

Decided Feb. 28, 1991.

---

926

Martha M. Hall, Asst. Federal Public Defender, San Diego, Cal., for defendant-appellant.

Michael J. Dowd, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BOOCHEVER, BEEZER and TROTT, Circuit Judges.

BEEZER, Circuit Judge:

Appellant, Jeff Brice, appeals the district court's order affirming the judgment and conviction entered by a magistrate after a bench trial. Brice was found guilty of impeding and disrupting a Government employee in violation of 40 U.S.C. §§ 318a, 318c and 486(c) and 41 C.F.R. §§ 101-20.-305 and 101-20.315. Brice alleges that there was insufficient evidence to support

his conviction and that 41 C.F.R. § 101–20.305 is unconstitutionally vague and overbroad. We affirm.

## I

At approximately 2:45 a.m. on July 1, 1988, a Suzuki Samurai automobile approached the San Ysidro California Port of Entry from Tijuana, Mexico. Brice, a black male, was the driver of the vehicle. His passenger was a white female. United States Customs Inspector Fink asked them about their citizenship and both replied that they were citizens of the United States.

In response to further questioning, Brice stated that he was not bringing anything across the border, that he lived in San Diego, California and that he was taking his passenger home. The passenger stated that she lived in Pacific Beach, California.

Fink later testified that several factors indicated a more thorough inspection was required. For example, she noticed that Brice had a military style haircut which interested her because military men have a curfew between 8:00 p.m. and 5:00 a.m. in Mexico. She also noticed that Brice did not look directly at her while responding to her questions. Finally, she believed that the Suzuki Samurai was a "high profile" vehicle, that is, a vehicle that was known to be used by smugglers. She stated that smugglers are known to build a hidden compartment in the back of the vehicle.

Fink asked Brice to step out of the vehicle and open up the back. Brice responded by stating, "Well, that means I'll have to turn off the car." Fink said, "Well, yes, that's correct". Brice removed the keys from the ignition but remained seated in the vehicle. Brice repeated, "Well, that means I'll have to turn off the car, get out, unlock it and open it up." Again Fink said, "Yes, sir, that's correct."

When Brice did not exit the vehicle, Fink inquired, "Do you realize you're coming across the International Border? Do you realize you're dealing with a Federal Officer? Do you understand the laws?" Brice responded affirmatively but remained in the vehicle with the keys in his hands. At this point, Fink decided to refer Brice to the secondary inspection area.

Fink asked Brice if he had a driver's license so that she could prepare to send him to secondary. She had been instructed to take a piece of identification so that an individual who ran rather than going to secondary could be tracked down. Brice responded that he had a license and Fink asked if she could see it.

Brice showed Fink his license while it was in his wallet. Fink instructed him to remove his license from the wallet and give it to her. Brice removed the license but held it up for Fink to see, stating that she could see it but not take it. Fink ignored the statement and forcibly took the license from Brice's hand.

Fink then moved to the rear of the vehicle to fill out a secondary referral slip. She motioned for backup assistance from two Customs Inspectors who were nearby in a marked blue and white Customs car. Fink informed her backup about the resistance she was receiving from Brice and then directed Brice to proceed to the flashing lights marking the entrance to secondary.

Brice later testified that he could not see the lights. He asked Fink "Why" he was being directed to secondary and she responded, "Because I asked you to." Brice continued to ask "Why" and to request that Fink return his license to him. Fink asked one of the backups for assistance, and Inspector Gomez told Brice that they were at an international border which subjected him to search every time he crossed. Gomez then stepped in front of the vehicle, intending to walk it into secondary. Brice started and revved the engine. Gomez asked him to turn the engine off and exit the vehicle. Brice refused and asked for the return of his license.

Fink then entered the vehicle from the passenger's side and turned off the engine and removed the keys. Brice was instructed to exit the vehicle. The inspectors then pulled him from the vehicle. Brice held his hands over his head forcing the inspectors to pull his arms down in order to place him in handcuffs. Brice was removed to the security office and placed in a cell.

On October 26, 1988, Brice was tried before the Honorable Roger Curtis McKee, United States Magistrate for the Southern District of California. The magistrate found Brice guilty of impeding and disrupting the performance of the official duties of a government employee in violation of 40 U.S.C. §§ 318a, 318c and 486(c) and 41 C.F.R. §§ 101–20.305 and 101–20.315.[1]

On October 27, 1988, the magistrate sentenced Brice to the custody of the Federal Bureau of Prisons for ten (10) days. Brice appealed the conviction, and on November 20, 1989, the district court affirmed. Brice timely appealed, and this court has jurisdiction under 28 U.S.C. § 1291.

## II

■ Brice contends that the evidence presented at trial was insufficient to support his conviction. In determining the sufficiency of the evidence to support a criminal conviction, we must view all the evidence in the light most favorable to the government. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). After considering the evidence in the light most favorable to the government, we must determine whether "any rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

To establish a violation of 41 C.F.R. § 101–20.305, the government was required to prove (1) that the conduct occurred on government property,[2] (2) that the regulation proscribing the conduct was posted in a conspicuous place on the property,[3] (3) that Brice acted knowingly and willfully,[4] (4) that Fink was a government employee,[5] and (5) that the conduct impeded or disrupted Fink in the performance of her official duties.[6]

In his brief on appeal, Brice concedes that the government proved that his conduct occurred on government property, that the regulation was posted in a conspicuous place, and that his conduct disrupted and impeded Fink. Brice's challenge of the

1. The combination of these statutes and regulations makes it a misdemeanor offense to impede or disrupt the performance of official duties by government employees. The statutes and regulations provide as follows:

40 U.S.C. § 318a (1988):

The Administrator of General Services or officials of the General Services Administration duly authorized by him are authorized to make all needful rules and regulations for the government of the property under their charge and control, and to annex to such rules and regulations such reasonable penalties, within the limits prescribed in section 318c of this title, as will insure their enforcement: *Provided,* That such rules and regulations shall be posted and kept posted in a conspicuous place on such property.

40 U.S.C. § 318c (1988):

Whoever shall violate any rule or regulation promulgated pursuant to section 318a of this title shall be fined not more [than] $50 or imprisoned not more than thirty days, or both.

40 U.S.C. § 486(c) (1988):

The Administrator shall prescribe such regulations as he deems necessary to effectuate his functions under this Act, and the head of each executive agency shall cause to be issued such orders and directives as such head deems necessary to carry out such regulations.

41 C.F.R. § 101–20.305 (1990):

Any loitering, disorderly conduct, or other conduct on property which creates loud or unusual noise or a nuisance; which unreason-ably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administrative services provided on the property in a timely manner, is prohibited.

41 C.F.R. § 101–20.315 (1990):

Whoever shall be found guilty of violating any rule or regulation in this subpart 101–20.3 while on any property under the charge and control of the U.S. General Services Administration is subject to a fine of not more than $50 or imprisonment of not more than 30 days, or both (See Title 40 U.S.Code 318c.) Nothing in these rules and regulations shall be construed to abrogate any other Federal laws or regulations or any State and local laws and regulations applicable to any area in which the property is situated (Sec. 205(c), 63 U.S. Statutes, 390; 40 U.S.Code 486(c)).

2. 40 U.S.C. § 318a (1988); 41 C.F.R. § 101–20.315 (1990).

3. 40 U.S.C. § 318a (1988).

4. The government concedes that this is an element of the crime.

5. 41 C.F.R. § 101–20.305 (1990).

6. *Id.*

sufficiency of the evidence is limited to questioning whether the evidence adequately demonstrated that he knowingly and intentionally disrupted or impeded Fink in the performance of her official duties.

Brice first argues that Fink was not performing her official duties. According to Brice, Fink based her decision to detain him on the fact that he had a military-style haircut. Brice asserts that Fink is not entrusted with the duty of seeking out military men in violation of their curfew.

Although Brice is correct in asserting that Fink's official responsibilities do not extend to enforcing the military curfew, it is difficult to see how this assertion alone advances his case. Fink testified that Brice's military style haircut was only one factor in her determination that Brice's vehicle required a more thorough inspection. She cited two other factors: Brice avoided eye contact and Brice's vehicle was a "high profile" vehicle. These two factors alone were sufficient for Fink to refer Brice to secondary. *See United States v. Troise*, 796 F.2d 310, 313 (9th Cir.1986).

Furthermore, Brice continued to supply Fink with more factors on which to base her decision to send him to secondary. Brice declined to open the back door of the vehicle. He refused to give Fink his driver's license. He revved his engine and refused to turn off his car. Brice's argument that all of these other factors were some how poisoned by Fink's interest in his military haircut is untenable. The evidence presented supports a finding that Fink was performing her official duties when she was disrupted and impeded by Brice.

■ The second aspect of Brice's insufficiency argument is that the evidence did not show that he knowingly and intentionally impeded or disrupted Fink in performing her official duties. Brice asserts that because he did not know Fink was performing her official duties, he could not have knowingly and intentionally impeded the performance of those duties.

Brice's argument assumes that the offense of which he was convicted is a specific intent crime. This assumption is incorrect. The government was only required to show that Brice knowingly and willfully performed the proscribed conduct.

Brice has cited no authority for the proposition that section 101–20.305 creates a specific intent offense. In *United States v. Meeker*, 527 F.2d 12 (9th Cir.1975), we held that an analogous statute, 49 U.S.C.App. § 1472(j), is a general intent crime. *Id.* at 14. Section 1472(j) prohibits a person from interfering with any flight crew member or flight attendant's performance of his or her duties. 49 U.S.C. App. § 1472(j) (1988). The language in section 1472(j) refers simply to conduct that interferes with the performance of official duties.

In *Meeker*, we stated that "[i]f Congress had intended to legislate a specific intent crime, the statute probably would have said 'with the intent to' interfere rather than 'so as to' interfere." 527 F.2d at 14. Furthermore, in *United States v. Jim*, 865 F.2d 211 (9th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 93, 107 L.Ed.2d 58 (1989), we held that 18 U.S.C. § 111 which makes it unlawful to forcibly assault, resist, oppose, impede, intimidate, or interfere with a federal officer engaged in the performance of official duties is a general intent crime. *Id.* at 215.

The regulation at issue in this case, section 101–20.305, refers simply to conduct that "impedes or disrupts." 41 C.F.R. § 101–20.305 (1988). There is no mention of a requirement of "intending to" impede or disrupt. If the Administrator of General Services (Administrator) had intended to prescribe a specific intent regulation, the regulation would have addressed the intent of the perpetrator. The wording of the regulation, however, does not refer to any intent to interfere with the official duties of a government official.

We must look to the words and purposes of the regulation to determine whether general or specific intent will best serve that purpose. *See Jim*, 865 F.2d at 213. As discussed above, the words do not indi-

cate that the Administrator intended section 101–20.305 to be a specific intent crime. Section 101–20.305, along with the other regulations in that subpart, was created in an attempt to control certain conduct on federal property "in order to preserve the normal functioning of federal facilities." *United States v. Stansell,* 847 F.2d 609, 614 (9th Cir.1988).

The language of section 101–20.305 indicates that the Administrator intended to prevent conduct interfering with the performance of official duties, not just activity that was specifically intended to create an interference with those duties. The purpose of ensuring the normal functioning of federal facilities is best served by construing section 101–20.305 as a general intent crime.

### III

The final issue raised by Brice is that section 101–20.305 is unconstitutionally vague and overbroad. Brice's challenge to the constitutionality of section 101–20.305 is reviewed de novo. *See Stansell,* 847 F.2d at 612.

### A

Brice first argues that section 101–20.305 is vague because it does not proscribe specific conduct and thus encourages arbitrary and discriminatory enforcement. A penal statute is examined under the void-for-vagueness doctrine on a two-step analysis. The statute must describe the criminal offense sufficiently to allow ordinary people to understand what conduct is prohibited and it must provide adequate guidelines to govern law enforcement. *United States v. Van Hawkins,* 899 F.2d 852, 853–54 (9th Cir.1990).

Brice has conceded that his conduct impeded or disrupted Fink. His vagueness argument, therefore, does not allege that section 101–20.305 should not cover his con-

duct; it merely alleges that a lack of adequate guidelines allowed Fink to enforce the regulation in an arbitrary and discriminatory manner by focusing on Brice's military haircut and seizing his driver's license.

Brice alleges that the regulation lacks guidelines which are sufficient to instruct government officials as to the exact nature of their official duties. He also asserts that this lack of guidelines created a vagueness problem which allowed Fink to arrest Brice for obstructing her efforts to enforce the military curfew.

A reading of the regulation does not reveal any of the type of vagueness problems Brice alleges. The regulation is limited to conduct that "impedes or disrupts the performance of official duties by Government employees...." 41 C.F.R. § 101–20.305 (1988). If a defendant believes he was not impeding the official duties of a government employee, he can raise as a defense that his conduct did not impede or disrupt. The court rather than the government employee will determine whether an official duty has been impeded.[7]

### B

Brice's final argument is that section 101–20.305 is unconstitutionally overbroad because it does not clearly identify the prohibited acts. Under the overbreadth doctrine, attacks are permitted on regulations of conduct that delegate "standardless discretionary power to local functionaries, resulting in virtually unreviewable prior restraints on First Amendment rights." *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). However, a regulation is not unconstitutionally overbroad if it can be "properly circumscribed with a limiting construction that would confine the statute to permissible applications." *Stansell,* 847 F.2d at 613. "Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged

---

7. Raising such a defense is exactly what Brice did in his earlier argument that the evidence

presented at trial was insufficient to support his conviction.

statute." *Broadrick*, 413 U.S. at 613, 93 S.Ct. at 2916.

Brice contends that because section 101–20.305 does not clearly identify the prohibited acts, his right to ask why he was being referred to secondary inspection was violated. We disagree. Brice has failed to show that the alleged restriction on his speech is more than an incidental restriction. "If conduct contains both speech and non-speech elements, and if Congress has the authority to regulate the non-speech conduct, incidental restrictions on freedom of speech are not constitutionally invalid." *See United State v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir.), *cert. denied*, 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987).

Brice does not challenge Congress' authority to regulate his behavior at a Port of Entry, and he has not shown that the effect of the regulations on his speech were anything more than incidental restrictions on his freedom of speech. Brice, has, therefore, failed to show that his first amendment rights were improperly impinged. Accordingly, we do not have to determine whether section 101–20.305 can be properly circumscribed with a limiting construction.

### IV

Brice failed to establish that the evidence presented was insufficient to support his conviction. Section 101–20.305 is not a specific intent crime, nor is it unconstitutionally vague or overbroad.

AFFIRMED.