**UNITED STATES of America, Plaintiff,**

v.

**Thomas BUEHLER, Defendant.**

**No. 92–0163A–01.**

United States District Court,
E.D. Washington.

June 22, 1992.

Stephanie J. Johnson, Asst. U.S. Atty. and Jeffrey R. Cutter, Legal Intern, U.S. Attorney's Office, Spokane, for plaintiff.

Charles S. Dorn, Spokane, for defendant.

## OPINION FOLLOWING BENCH TRIAL

IMBROGNO, United States Magistrate Judge.

At the June 10, 1992 bench trial in the captioned matter, attorney Charles Dorn represented Defendant, Thomas Buehler. Jeff Cutter, Legal Intern from the Office of the United States Attorney, represented Plaintiff, United States of America. Defendant consented to proceed before the United States Magistrate Judge. This Opinion memorializes the findings and conclusions of this court after consideration of the testimony, the written briefs and the argument of counsel.

### FACTS

On August 3, 1991, Defendant was fishing from a boat within the boundaries of the Lake Chelan National Recreation Area (LCNRA) located in the Eastern District of Washington. National Park Service rangers Craig Patterson and Nick Herring, who observed Defendant fishing, approached him by boat in the vicinity of Painted Rocks on Lake Chelan. Rangers Patterson and Herring were in a National Park Service patrol craft at the time of contact and were wearing Park Service uniforms.

Ranger Herring, a fourteen year veteran of the National Park Service, with 2,000 hours training in law enforcement, testified he identified himself as a National Park Service ranger and then informed Defendant he intended to check his fishing license and catch. Defendant asked Ranger Herring if he was with the Washington State Fish and Game Department. Ranger Herring replied he was with the National Park Service. Defendant then produced a wallet stating he had a fishing license, but that he would not show it to Ranger Herring because he did not believe the National Park Service was entitled to see it. Ranger Herring informed Mr. Buehler he did have authority under Title 36 C.F.R. Ranger Herring then asked Defendant his name and was told "Thomas Buehler." Ranger Herring asked if he was correct in assuming Mr. Buehler was refusing to show his fishing license. Mr. Buehler validated the correctness of that assumption. Ranger Herring then explained he was left with no choice but to issue a citation to Mr. Buehler for refusing to show his fishing license. The Defendant reiterated his position that Ranger Herring had no authority to do so.

Next, Ranger Herring asked to see a driver's license and Defendant refused to produce it. Similarly, Defendant refused to give a mailing address or date of birth, other than the year of his birth. At that point, Ranger Herring recorded a physical description of Defendant, the boat, and the boat's numbers.[1] The rangers then left the scene. Approximately twenty minutes la-

---

1. There was no registration sticker on the boat. However, Defendant was not cited for that al- leged violation, and it otherwise is not at issue.

ter, they returned and took several Polaroid snapshots of the boat and Defendant.

The rangers later determined Defendant's address after observing his boat at a nearby lake cabin. A license check revealed the necessary information for issuance of a citation. On August 19, 1992, Ranger Herring served Defendant with a citation for intentionally interfering with agency function, 36 C.F.R. § 2.32(a)(1).

At trial, Defendant, age 26 and an airline pilot for Horizon Airlines, testified he signed his Washington State fishing license (Defendant's Exhibit No. 1) when it was purchased. The small print on the license states the holder certifies, under penalty of law, "I agree to show license, fish and game to a Department of Wildlife employee when requested." Defendant testified to his belief that this language meant the license was required to be produced for inspection only by an employee of the Washington State Department of Wildlife. However, Defendant did not specifically tell the ranger he was relying on that language when he refused to show the fishing license. Defendant further testified he was really "very tired of being harassed" by the Park Service and, as far as he was concerned, a Park Service uniform did not indicate authority to act as a fish or game officer. Rather, according to the Defendant, the ranger could be "the guy collecting garbage." Defendant argues his refusal to cooperate was legally insufficient to justify the issuance of a citation for or conviction of intentional interference.

## DISCUSSION

On October 2, 1968, Congress enacted legislation creating the North Cascades National Park within which the LCNRA is located. Pub.L. 90–544, Title I, Section 101, Oct. 2, 1968, 82 Stat. 926, codified at 16 U.S.C. § 90. LCNRA includes "the lands and *waters* within the area designated 'Lake Chelan Recreation Area'...." (Emphasis added.) 1968 U.S.C.C.A.N. 3874, codified at 16 U.S.C. § 90a–1. The

southern boundary of the LCNRA extends across the northern portion of Lake Chelan, including the Painted Rocks vicinity.[2]

Section 90c–1 of Title 16 U.S.C. provides:

(a) The Secretary shall administer the recreation areas in a manner in which in his judgment will best provide for (1) public outdoor recreation benefits and (2) conservation of scenic, scientific, historic, and other values contributing to public enjoyment.... In administering the recreation areas, the Secretary may utilize such statutory authorities pertaining to the administration of the national park system, and such statutory authorities otherwise available to him....

.    .    .    .    .

(d) The Secretary shall permit ... fishing on ... waters under his jurisdiction within the boundaries of the recreation areas in accordance with applicable laws of the United States and of the State of Washington....

■ A National Park ranger has substantially the same powers and duties as other federal law enforcement officers, including full authority to enforce federal law in national parks and recreation areas. *United States v. Gibson*, 896 F.2d 206, 209 (6th Cir.1990). That authority includes the right to carry firearms, make arrests, and conduct investigations while in the boundaries of the national park areas and within the scope of their authority. 16 U.S.C. § 1a–6.

The applicable laws of the State of Washington prohibit fishing without a valid fishing license and limit the number and size of catch. RCW 77.32.010, 75.08.080. Additionally, pertinent provisions of 36 C.F.R. § 2.3 provide:

(a) Except in designated areas or as provided in this section, fishing shall be in accordance with the laws and regulations of the State within whose exterior boundaries a park area or portion thereof

---

**2.** The issue of proprietary jurisdiction is not applicable insofar as it pertains to the jurisdiction of the bed and banks of Lake Chelan.

There is no dispute Defendant was located on the waters of the lake.

is located. Nonconflicting State laws are adopted as a part of these regulations.

.  .  .  .  .

(f) Authorized persons may check fishing licenses and permits; inspect creels, tackle and fishing gear for compliance with equipment restrictions; and inspect fish that have been taken for compliance with species, size and other taking restrictions.

(g) The regulations contained in this section apply, regardless of land ownership, on all lands and waters within a park area that are under the legislative jurisdiction of the United States.

Thus, the rangers were performing an authorized agency function pursuant to federal law when they contacted Defendant.

▮ Defendant was cited for interfering with an authorized agency function, 36 C.F.R. § 2.32(a)(1). Section 2.32 of Title 36 C.F.R. provides in relevant part:

(a) The following are prohibited:

(1) Interference. Threatening, resisting, intimidating, or *intentionally interfering* with a government employee or agent engaged in an official duty, or on account of the performance of an official duty.[3] (Emphasis added.)

That citation was issued on grounds Defendant refused to produce a valid fishing license and when asked for identification, refused to produce a valid driver's license or any other piece of identification.[4]

Defendant contends he refused to produce his fishing license on a good faith belief he was required to produce it only for a representative of the State Department of Wildlife, as specifically indicated in

language found on the fishing license. When the park ranger did not identify himself as an agent of the Department of Wildlife, Defendant refused to produce the license. When asked for identification, Defendant gave the name Thomas Buehler but refused to give his address or produce his driver's license to verify his identification.

To convict Defendant of the charged offense, the federal prosecutor must establish (1) the United States has jurisdiction to act, and (2) each element of the offense is established beyond a reasonable doubt. There is no challenge to jurisdiction; thus, the issue is whether the elements of the charge were proven beyond a reasonable doubt. Defendant argues his refusal to cooperate does not rise to the level of intentional interference contemplated by the federal statute. It is undisputed Defendant's conduct does not rise to the level of threatening, resisting or intimidating.

▮ The elements of the charge involve intent and interference. As to the first element, a regulation may proscribe conduct involving either a general or specific intent by the actor. To determine whether proof of a general or specific intent is required, the court must look to the words and purposes of the regulation. If Congress intends to legislate a specific intent crime, the statute will contain language to that effect, *e.g.* "with intent to interfere" rather than "so as to interfere". *United States v. Brice*, 926 F.2d 925 (9th Cir.1991), citing *United States v. Meeker*, 527 F.2d 12 (9th Cir.1975). Here, the words of the regulation refer to a specific intent to interfere since the regulation pro-

---

**3.** The Assimilative Crimes Act, 18 U.S.C. § 13, is not applicable as the conduct for which Defendant was cited is made penal by a specific federal, rather than state, law. See *United States v. Palmer*, 945 F.2d 246, 247 (9th Cir. 1991). It follows that any disparity between state and federal law will not excuse Defendant's behavior if the federal charge is legally sufficient. *Id.*

**4.** Defendant contends he could have been charged only with fishing without a license under RCW 77.32.010 or RCW 77.32.256 and WAC 232.12.618, citing *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). In

*Busic,* a general statute provided for enhanced penalty if a firearm were used or carried during the commission of a federal felony. Additionally, a specific statute defining the predicate felony (assault with a deadly weapon) provided for enhanced penalty if a firearm were used. The Court held the defendant could only be sentenced under the specific statute under the rule of lenity and applicable statutory construction principles (specific statute takes precedence over general statute). *Busic* is not applicable here because the elements of the state offense are different from the elements of the federal charge.

scribes conduct that "intentionally interferes." Thus, the regulation is meant to prohibit conduct that is intended to interfere, not just conduct that creates an interference. *Brice*, at 930.

██ Specific intent may be established by circumstantial evidence because that issue is seldom provable by direct evidence. *United States v. Christoffel*, 952 F.2d 1086, 1089 (9th Cir.1991), *cert. denied* — U.S. ——, 112 S.Ct. 1700, 118 L.Ed.2d 410 (1992). It may be inferred from the conduct of the Defendant, the facts and circumstances that demonstrate mental attitude and the reasonable inferences to be made from that evidence. *Gibson*, 896 F.2d at 209. When specific intent is an element of an offense, the fact a defendant reasonably believes he is not violating any law would be a defense. *United States v. Brady*, 710 F.Supp. 290, 295 (D.Colo.1989). Here, Defendant not only refused to produce his fishing license, but also refused to provide his address and verification of his identity to a National Park Service ranger who was in uniform at the time of the incident. Defendant's statement to the court indicates he felt he was being harassed which arguably justified his refusal to cooperate. However, there is no objective evidence to verify this assertion, other than a vague reference to ongoing hostility between law enforcement and residents of the area. Defendant's subjective belief he was excused from producing his fishing license by virtue of the language on the license is of no moment. It was not reasonable to refuse to identify himself to the ranger and provide verification of that identification. His refusal to provide that information and the motives behind the refusal are sufficient evidence he specifically intended to interfere with the ranger's official duty of conducting an

investigation within the scope of his authority.[5] 36 C.F.R. § 2.3(f). Thus, Defendant's reliance on *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959) is misplaced.

██ As to the second element, Defendant argues interference cannot be predicated on a refusal to cooperate or provide information, citing *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). In *Brown*, local Texas police officers stopped the defendant and asked him for identification merely because he was in an area known for drug activity. After refusing to identify himself, he was arrested and convicted under a Texas statute which defined his conduct as criminal. *Brown* analyzed the constitutionality of the Texas statute under the law found in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and the premise a request for identification constitutes a seizure subject to the requirements of the Fourth Amendment. The Court reversed the conviction after concluding there was no articulable suspicion the defendant had engaged in criminal activity. Thus, the initial stop and the subsequent seizure were unreasonable. *Brown*, at 53, 99 S.Ct. at 2641.

██ *Brown* does not require this court to dismiss the charge against Defendant. Defendant's refusal to provide identification interfered with the ranger's duty of issuing the citation that required the Defendant's correct name and address. Any seizure under these circumstances was reasonable, limited in scope, and within the legal parameters of *Brown*.[6] Furthermore, the fact Defendant may have reasonably believed he was not required to produce his fishing license for inspection by

5. Defendant also raised the defense of vindictive prosecution, tendering a transcript of a recorded cellular phone conversation between Ranger Herring and an Assistant United States Attorney. Assuming without deciding that the transcript is admissible for the truth of the matters stated, and for impeachment purposes, the evidence is insufficient to demonstrate the first element of the offense. *Seven Star Inc. v. United States*, 933 F.2d 791, 793 (9th Cir.1991). Nor

does it constitute evidence of outrageous government conduct, the elements of which are found in *United States v. Smith*, 802 F.2d 1119 (9th Cir.1986). In addition, the transcript does not otherwise erode the United States' case.

6. The Washington rule is the same as the federal. *State v. White*, 97 Wash.2d 92, 105, 640 P.2d 1061 (1982).

the federal agent[7] does not constitute a defense to his refusal to produce other identification or provide his address.[8] Accordingly, the United States has met its burden of proving, beyond a reasonable doubt, the elements of the offense charged.

IT IS ORDERED:

1. Defendant is GUILTY of the charged offense.

2. Defendant shall file and serve his written statement of allocution, if any, no later than ten (10) days from the date of this Order, at which time the court will issue a written sentencing Order. The ten days for filing a notice of appeal will run from the sentencing Order date.

---

**7.** This court need not and, therefore, does not address whether Defendant's reliance on the language of his fishing license would have been a valid defense to a citation issued by a federal agent for failure to have or produce a fishing license.

**8.** It is also noted that under Washington law, minor traffic violations are infractions and thus do not provide a basis for custodial arrest. Custodial arrest can occur, however, if the violator refuses to provide identification to enable the officer to issue a citation. *See State v. Barajas,* 57 Wash.App. 556, 559, 789 P.2d 321, *rev. denied,* 115 Wash.2d 1006, 795 P.2d 1157 (1990) and cases cited therein.