42 F.3d 1403
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clifford B. FREEMAN, Defendant-Appellant.
 No. 93-10663.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 11, 1994.
Decided Nov. 21, 1994.
 
 1
 Before: LEAVY and KLEINFELD, Circuit Judges, and MARSH,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Clifford Freeman appeals his convictions for interference with a firefighter on public land and interference with a Bureau of Land Management employee performing official duties on public land. Freeman contends that the trial court: (1) improperly coerced the jury to reach its verdict; (2) should have instructed the jury on his proposed Fourth and Fifth Amendment defenses; and (3) should have instructed the jury on the issue of specific intent. We affirm.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 4
 Viewing the evidence in the light most favorable to the jury verdict, the facts of this case are as follows: Freeman owns and resides on an unpatented mining claim known as the Little Pan Mine near Black Canyon City, Arizona. The United States retains title to the land on which Freeman's claim is located.
 
 
 5
 On June 11, 1991, while he was working on the Little Pan, Freeman accidentally set fire to a derelict car that he was dismantling for scrap. Members of the local fire department arrived. Freeman greeted them with loud profanities and threats. Fearing for their safety, the firefighters left the scene.
 
 
 6
 The next day, two officers of the Bureau of Land Management (BLM) went to the Little Pan to investigate. Freeman was not present. The officers returned a short time later. By this time, Freeman had also returned. He rushed towards the officers with clenched fists, shouting profanities and threats. At some point, one officer asked Freeman about the fire; Freeman replied that he had run the firefighters off his property. Freeman continued his onslaught. The officers beat a hasty retreat.
 
 
 7
 On March 3, 1992, the government filed an information charging Freeman with (1) interfering with a firefighter on public land in violation of 43 C.F.R. Sec. 9212.1(f), and (2) interfering with a BLM employee performing official duties on public land, in violation of 43 C.F.R. Sec. 8365.1-4(a)(4).[1]
 
 
 8
 With his consent, Freeman was tried before a magistrate. His trial began on June 10, 1992. At trial, Freeman testified that he "told him [the chief firefighter] to leave and he left. If you want to say I ran him off, I would assume that yes, I ran him off the property." Freeman admitted telling the firefighters that there would be "trouble" if they remained. He also testified that he "told them [the BLM officers] to get the hell out of there. If that's running them off, I ran them off." Freeman admitted that the property on which he lives and works is public land.
 
 
 9
 The entire trial took a day and a half. The jury retired to deliberate at 10:40 a.m. on June 12, 1992. At 3:40 p.m., the jury sent a note to the magistrate, asking, "Can we have a verdict on one count and no decision (hung jury) on the other. Help." After discussion with both counsel, the court issued the following written instruction, analogous to that upheld in Allen v. United States, 164 U.S. 492 (1896):
 
 
 10
 Yes, however as to the Count with which you are having difficulty,
 
 
 11
 It is desirable, that if you reasonably can, you agree upon a verdict. For the parties involved, this case is an important one, and there is no reason to believe that the case could ever be submitted to a jury more competent to decide it.
 
 
 12
 You are now instructed to return to your consideration of the case and to bear in mind the following principles during your deliberations:
 
 
 13
 Each juror has a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment.
 
 
 14
 Each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with the other jurors.
 
 
 15
 In the course of the deliberations, a juror should not hesitate to reexamine his or her views and change an opinion if the juror is convinced it is erroneous; and
 
 
 16
 No juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict.
 
 
 17
 Thirty-five minutes after receiving this instruction, the jury notified the court that it had reached a decision. The jury convicted Freeman of both counts. Freeman appealed to a district court judge pursuant to 18 U.S.C. Sec. 3402. The district court affirmed Freeman's conviction. Freeman timely appeals.
 
 II.
 DISCUSSION
 A. Allen Charge
 
 18
 Freeman first contends that the trial court's Allen charge improperly coerced the jury into reaching its guilty verdicts. This court reviews an Allen instruction for abuse of discretion. United States v. Wauneka, 842 F.2d 1083, 1088 (9th Cir.1988). Four factors are considered in assessing the potential coercive effect of such an instruction: (1) the form of the instruction given; (2) the period of jury deliberation following the instruction; (3) the total time of deliberation; and (4) any indicia of coerciveness or pressure upon the jury. Id.
 
 
 19
 We hold that the district court's Allen charge was not an abuse of discretion. The form of the instruction was not coercive. The court began its instruction by telling the jury it could indeed reach no decision on one count. During the course of the charge, the court reminded the jurors no less than four times that they should not sacrifice their sincere convictions for the sake of reaching a verdict. When an Allen instruction "is counterbalanced by the caution that a juror should not abandon his conscientiously held views, we have generally upheld the instruction as not coercive." United States v. Bonam, 772 F.2d 1449, 1451 (9th Cir.1985) (per curiam).
 
 
 20
 The jury's total deliberations of five hours and thirty-five minutes were entirely reasonable. The factual issues here were straightforward: Either Freeman said and did the things ascribed to him, or he didn't; either his words and actions constituted "interference" or they didn't. The entire trial took only a day and a half. Five hours and thirty-five minutes of deliberation were not "so disproportionate to the task before the jury as to raise an inference" of coercion. United States v. Beattie, 613 F.2d 762, 766 (9th Cir.), cert. denied, 446 U.S. 982 (1980).
 
 
 21
 We also find no other indicia of coercion in the record. True, the jury here deliberated only thirty-five minutes after receiving the Allen instruction. However, this court has held that, "[w]hile the time elapsed between charge and verdict is significant, it is not dispositive." Id. at 765. In this case, none of the other Allen factors supports a finding of coercion. Wauneka, 842 F.2d at 1089 (refusing to infer coercion merely "from the lengthiness of the jury's deliberations before the charge and the shortness of the deliberations after it"). Moreover, the brief post-charge deliberations here were reasonable. The issues here were relatively straightforward; the entire trial lasted only a day and a half; and only two counts went to the jury. See Bonam, 772 F.2d at 1451 (finding ninety minutes of post-charge deliberation adequate "given the simple nature of the issue presented").
 
 B. Fourth and Fifth Amendment Defenses
 
 22
 Freeman next contends that the trial court erred by not instructing the jury on his proffered Fourth and Fifth Amendment defenses. This court has not yet resolved the issue of whether a district court's denial of a proposed jury instruction is reviewed de novo or for abuse of discretion. United States v. LaFleur, 971 F.2d 200, 204 (9th Cir.1992) (noting conflict and applying de novo review when district court rejected proffered instruction as contrary to law), cert. denied, 113 S.Ct. 1292 (1993). We need not and do not resolve this conflict today. By either standard, Freeman's arguments lack merit.
 
 1. Fourth Amendment Defense
 
 23
 Freeman's first defense was that, under the Fourth Amendment, he had a right not to cooperate with the firefighters' and BLM officials' "warrantless" entries upon his property. The district court properly rejected this defense.
 
 
 24
 The firefighters and BLM officers did not search Freeman's residence or even enter it. Rather, they merely approached him in the open area of his claim in order to ask questions. This court has upheld a warrantless approach to a private residence, observing that "anyone may openly and peaceably, at high noon ... walk up the steps and knock on the front door of any man's 'castle' with the honest intent of asking questions of the occupant thereof--whether the questioner be a pollster, a salesman, or an officer of the law." United States v. Roberts, 747 F.2d 537, 543 (9th Cir.1984) (quotation omitted). The Roberts holding applies with even more force here, where the federal government retains legal title to the land in question. No warrant was required for the government's limited intrusions onto Freeman's claim. The trial court thus did not err in rejecting Freeman's Fourth Amendment instruction.[2]
 
 2. Fifth Amendment Defense
 
 25
 Freeman next argues that the jury should have been instructed on Fifth Amendment principles, specifically his privilege against self-incrimination, so that they would not convict him for merely refusing to answer the BLM officers' questions. We disagree. In light of the previous day's events, the BLM officers were clearly entitled to approach Freeman on public land and ask him if he would answer their questions. See Florida v. Royer, 460 U.S. 491, 497 (1983) (plurality opinion). Further questioning may well have implicated Freeman's Fifth Amendment rights, but Freeman never allowed matters to reach that point: He answered the only question the officers were able to ask, then "ran them off" the property. The privilege against self-incrimination is not a license to attack federal officers. Cf. United States v. Przybyla, 737 F.2d 828, 829 (9th Cir.1984) (per curiam) (defendant not allowed to assault IRS agents in order to prevent assertedly improper seizure of assets), cert. denied, 471 U.S. 1099 (1985); United States v. Hoff, 22 F.3d 222 (9th Cir.1994) (no First Amendment privilege to incite dog to attack forest ranger).
 
 3. Privilege to Resist Bad Faith Conduct
 
 26
 Freeman also contends that there was evidence that one BLM agent provoked the confrontation with Freeman, by attempting to question Freeman and by putting his hand on his gun when he felt that Freeman was threatening him. He contends that the court could have instructed the jury that Freeman had a "privilege" to resist the officers' alleged bad faith and provocative conduct.
 
 
 27
 Freeman did not propose such an instruction at trial. Nor was the trial court obliged to issue one sua sponte. Freeman's theory at trial was that he was privileged to resist the officers' alleged Fourth and Fifth Amendment violations. The excerpts of record indicate that Freeman alleged "provocation" in order to show that he did not "willfully" interfere with the BLM officers, not in order to establish a privilege. The jury rejected the former theory, and the trial court did not plainly err in failing to instruct them on the latter. See United States v. Span, 970 F.2d 573, 578 (9th Cir.1992) (no plain error not to instruct jury on defendants' asserted privilege to resist excessive force by federal officers, where defendants "offered no such instruction, and ... did not rely on this theory of defense at trial"), cert. denied, 113 S.Ct. 1283 (1993).[3]
 
 C. Specific vs. General Intent
 
 28
 In order to convict Freeman, the jury was required to find that he acted knowingly and willfully. Freeman argues that "willfulness" in this context requires a finding of specific intent to do what the law forbids. The trial court instead used a general intent instruction. "[W]hether a jury instruction misstated elements of a statutory crime is a question of law and is reviewed de novo." United States v. Spillone, 879 F.2d 514, 525 (9th Cir.1989).
 
 
 29
 The regulations that Freeman violated prohibit interference with firefighters or BLM employees engaged in official duties: The regulations make no mention of, and thus do not require, specific intent to interfere. See 43 C.F.R. Secs. 8365.1-4(A)(4), 9212.1(f).[4] In construing similar provisions, this court has held that the absence of any mention of intent precludes a requirement of specific intent. See United States v. Brice, 926 F.2d 925, 929-30 (9th Cir.1991) (conviction for interference with government employees does not require specific intent); United States v. Meeker, 527 F.2d 12, 14 (9th Cir.1975) (conviction for interference with airplane flight crew members does not require specific intent).
 
 
 30
 The regulatory language requiring only general intent also accords with the regulatory purpose. Firefighters and BLM employees are entrusted with protecting and preserving the public lands and those who travel upon them. Willful interference with these functions is an equal threat to public safety whether or not the perpetrator actually intends to break the law. See Brice, 926 F.2d at 929-30 (finding that analogous regulations, promulgated by Administrator of General Services, were intended to control conduct on federal property and preserve federal functions, not just prohibit activity specifically intended to disrupt those functions). Because the regulations at issue only required general intent, the trial court properly rejected Freeman's proposed specific intent instruction.
 
 
 31
 AFFIRMED.
 
 
 
 *
 Honorable Malcolm F. Marsh, United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The information also alleged that Freeman disposed of nonflammable trash on public land and caused a fire other than a campfire on public land. The district court dismissed the former charge before trial and dismissed the latter at the close of the government's case
 
 
 [2]
 In a related vein, Freeman contends that the trial court should have admitted testimony by a former BLM officer that, as a matter of course, he provided advance notice to mining claimants before routine inspections. The government rightly observes that the BLM investigation was anything but a routine periodic inspection. The trial court properly excluded the proffered testimony as irrelevant
 
 
 [3]
 Freeman also argues that the district court improperly excluded evidence as to a previous run-in with private firefighters, who had billed him for putting out an earlier fire. We disagree. The district court allowed Freeman to testify as to the existence and nature of that encounter in order to help explain why he later resisted the firefighters' efforts. The court quite properly excluded any further presentation on this collateral dispute
 
 
 [4]
 Section 8365.1-4(a)(4) provides, in pertinent part, that "[n]o person shall cause a public disturbance or create a risk to other persons on public lands by ... interfering with any [BLM] employee or volunteer engaged in performance of official duties." Section 9212.1(f) provides, in pertinent part, that "it is prohibited on the public lands to ... [r]esist or interfere with the efforts of firefighter(s) to extinguish a fire."