F I L E D
United States Court of Appeals
Tenth Circuit

MAY 7 1997

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

TERESA S. BEALL; VICTORIA A.
LUKAS; JUDITH A. TRUETT,

      Plaintiffs-Appellants,

  and

VICKI L. MOORE,

      Plaintiff,

v.

TERRY MCGAHA, an officer of the
United States Forest Service, in his
individual capacity,

      Defendant-Appellee.

No. 96-2095
(D.C. No. CIV-94-1327-JC)
(D. N.M.)

---

ORDER AND JUDGMENT[*]

---

Before BALDOCK, EBEL, and LUCERO, Circuit Judges.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiffs-appellants Teresa S. Beall, Judith A. Truett, and Victoria A. Lukas, appeal the district court's grant of summary judgment in favor of defendant Terry McGaha, on their civil rights claims brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 392 (1971). Plaintiff Vicki L. Moore does not appeal the court's judgment. Because there are no material facts in dispute and defendant is entitled to judgment as a matter of law, we affirm.[1]

On February 22, 1994, the National Forest Service issued Special Closure Order 06-125, which prohibited, inter alia, being "publicly nude" in the areas of the upper and lower San Francisco Hot Springs, in the Gila National Forest in New Mexico. A copy of the special closure order, with both a legal description and a map of the closed areas, was posted at the main entryway to the hot springs area, on Forest Service Road 519, as well as at the district office and at the Gila National Forest Supervisor's office. No other posting was made.

On March 3, 1994, plaintiffs entered the San Francisco hot springs area on horseback, via private land. They did not enter the area by Forest Service Road 519, and did not see the posted order. Plaintiffs decided to bathe at the lower San

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Francisco hot springs, which they mistakenly considered to be a "clothing optional" hot springs.[2]

Plaintiffs disrobed and immersed themselves in waist-deep water. Defendant, a Forest Service law enforcement officer, discovered plaintiffs during his patrol of the hot springs. Believing that they had violated the special closure order, defendant directed plaintiffs to exit the water and show him identification. Plaintiffs initially refused to comply, and after a somewhat heated discussion, defendant threatened to take plaintiffs to jail. After several requests from plaintiffs, defendant turned his back to allow them to exit the hot springs, and did so again after turning around before plaintiffs were fully clothed. Defendant did not have physical contact with plaintiffs or search their belongings. After plaintiffs were clothed, defendant issued each of them a warning for being publicly nude.

Plaintiffs brought this civil rights action against defendant, alleging that the officer's actions constituted an unreasonable seizure and search which violated their right to privacy. The district court granted defendant summary judgment on

---

[2]    There is some question whether plaintiff Beall, a seasonal employee for the Glenwood Ranger District, had notice that the lower hot springs were closed to public nudity. Both the closure order issued in 1991 and the order issued in 1994 were posted at the Glenwood district office. Further, the Glenwood office had specifically questioned and verified that the lower hot springs were included within the closure order. See R. doc. 28, ex. A, p. 1, ex. D, pp. 11, 25, doc. 31, ex. E, p. 26.

the ground that his conduct did not violate any of plaintiffs' constitutional rights, or, in the alternative, because he was entitled to qualified immunity for his actions.

On appeal, we consider plaintiffs' arguments that defendant lacked probable cause[3] to seize and search them, and that the manner in which he conducted the seizure and search unreasonably violated their privacy rights. We do not address their ineffective assistance of counsel claim, because there is no constitutional right to counsel in a civil action, and because this court is not the

---

[3]   It is not clear that probable cause was required to justify the seizure in this case. The contact between defendant and plaintiffs, being of limited duration and scope, and resulting only in the issuance of a warning, appears not to have been an "arrest" requiring probable cause. See Hayes v. Florida, 470 U.S. 811, 815-16 (1985) (noting that "arrest" occurs only when police procedures so qualitatively and quantitatively intrusive to suspect's freedom of movement and privacy interests as to require full protection of Fourth Amendment, such as forcible removal of person and transportation to police station for investigation).

Instead, the detention was more akin to an investigative detention, which is justified if the officer has a reasonable suspicion that the detainee has committed, is committing, or is about to commit a crime. See Berkemer v. McCarty, 468 U.S. 420, 437, 439-40 (1984) (holding that traffic stop, in which detention is presumptively temporary and detainee is usually released after citation issued, is akin to "Terry stop," requiring only reasonable suspicion); Prochaska v. Marcoux, 632 F.2d 848, 852 (10th Cir. 1980) (applying reasonable suspicion standard to wildlife conservation officer's stop of boat owner for failure to have current registration sticker and issuance of citation for operating vessel without proper safety equipment). Because no one has argued that this standard applies, and satisfaction of the higher probable cause standard necessarily entails satisfaction of the reasonable suspicion standard, we decide this case based on the existence of probable cause to support the seizure.

appropriate forum in which to initiate a private action against their former attorney.  See MacCuish v. United States, 844 F.2d 733, 735 (10th Cir. 1988) (holding there is no constitutional right to counsel in a civil action, and noting that malpractice action is appropriate remedy).

"The Fourth Amendment protects people from unreasonable government intrusions into their legitimate expectations of privacy."  United States v. Austin, 66 F.3d 1115, 1118 (10th Cir. 1995) (quotations omitted), cert. denied, 116 S. Ct. 799 (1996).  A seizure or search may be held unreasonable if a law enforcement officer lacked probable cause to justify the intrusion, or if the officer carried out the seizure and/or search in an unreasonable manner.  See Tennessee v. Garner, 471 U.S. 1, 7-8 (1985); Franklin v. Foxworth, 31 F.3d 873, 875 (9th Cir. 1994).

We review the district court's probable cause determination de novo.  See Ornelas v. United States, 116 S. Ct. 1657, 1663 (1996) (holding determinations of probable cause and reasonable suspicion to be reviewed de novo, but findings of historical fact to be reviewed only for clear error).  The reasonableness of a seizure or a search is question of law which is also reviewed de novo.  See United States v. Moore, 91 F.3d 96, 97 (10th Cir. 1996).  Lastly, the district court's qualified immunity determination at the summary judgment stage is reviewed de novo, viewing the evidence in the light most favorable to the nonmoving party.  See Mick v. Brewer, 76 F.3d 1127, 1134-35 (10th Cir. 1996).

## I. Probable Cause for Seizure and Search

An officer has probable cause to seize a suspect when the facts and circumstances within the officer's personal knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed. See United States v. Maher, 919 F.2d 1482, 1485 (10th Cir. 1990). Probable cause to conduct a search exists when the officer believes a crime has been committed and that evidence of the crime will be found in the place to be searched. See Franz v. Lytle, 997 F.2d 784, 787-88 (10th Cir. 1993). Based on the undisputed facts, we conclude that defendant had probable cause both to seize and to search plaintiffs.

We consider first whether defendant lacked probable cause to believe plaintiffs were "publicly nude," because their private areas were "covered" when he first saw them. The term "publicly nude" is defined by forest service regulation as follows:

> *Publicly nude* means nude in any place where a person may be observed by another person. Any person is nude if the person has failed to cover the rectal area, pubic area or genitals. A female person is also nude if she has failed to cover both breasts below a point immediately above the top of the areola. Each such covering must be fully opaque.

36 C.F.R. § 261.2.

Plaintiffs allege that when defendant arrived at the hot springs, their private areas were obscured by the murky water, and their breasts were hidden behind their arms and knees. Defendant, on the other hand, alleges that the water was sufficiently clear to see through, and that plaintiffs obscured their breasts only after he arrived. Because this case was decided at the summary judgment stage, we accept as true plaintiffs' version of the disputed facts. See Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992).

Even if, upon defendant's arrival, plaintiffs were not "publicly nude," as defined, we conclude that the officer had probable cause to believe plaintiffs had been "publicly nude" when entering the hot spring. It was reasonable to believe that plaintiffs were unclothed, based on defendant's observation of their clothing at the edge of the spring and the undisputed evidence that plaintiffs' breasts were above the water line. These observations were corroborated by statements by one of the plaintiffs that they were not violating the law because he could not see them nude and that they could be naked on public land unless it was posted otherwise. See R. I, doc. 28, ex. D at 29, 30, 38; doc. 31, ex. K at 69, ex. N at 56. It was also reasonable to believe that plaintiffs had been nude when entering the hot spring, as their clothes were dry.

Lastly, it was reasonable to believe that the hot springs were a "place where a person may be observed by another person." 36 C.F.R. § 261.2. Plaintiffs were

on public land, in a recreation area open to the general public. See, e.g., Hawaii v. Rocker, 475 P.2d 684, 688 (Haw. 1970) (holding that beach isolated by hill and ledge, away from view of road and adjoining beaches, but accessible by path and used by twenty to twenty-five people over two-month period, was a public place because defendants' nudity likely to be seen by a number of casual observers).

We turn to plaintiffs' argument that defendant lacked probable cause to believe they violated the closure order, because he knew the order had not been properly posted. Federal regulations require that an order be displayed "in such locations and manner as to reasonably bring the prohibition to the attention of the public." 36 C.F.R. § 261.51. The order was posted at the Glenwood Ranger District Office, the Gila National Forest Supervisor's Office, and on a Forest Service bulletin board at the entrance to the hot springs on Forest Service Road 519. Based on the undisputed evidence that despite other methods of access, the primary method of accessing the lower hot springs was via Forest Service Road 519, the district court found the order was posted properly. See R. I, doc. 28, ex. A at 1 ("Forest Service Road 519 . . . is the only access road leading to the hot springs area"), ex. D at 6 (estimating that 99.9 percent of people entering hot springs did so via Forest Road 519), ex. E at 12, 14, 17 (testifying that although other methods existed, bulk of the hot springs traffic entered by passing the

bulletin board, including four-wheel drive clubs), ex. G at 4-5, 7 (testifying 99.9 percent of people going to hot springs used road).

Plaintiffs argue that the district court erred in making this determination, and that their evidence of alternative methods of access, combined with statements by defendant's supervisors that the order may not have been properly posted, create a factual question as to the reasonableness of the posting. We disagree. Even if plaintiffs were correct, however, "qualified immunity shields [law enforcement officers] from suit for damages if a reasonable officer could have believed [the search and seizure] to be lawful, in light of clearly established law and the information the . . . [officer] possessed." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (quotations omitted). Defendant knew that the order had been posted at the main entrance to the hot springs,[4] that the vast majority of visitors used this entrance to access the lower hot springs, that the order was posted at the same place as a prior closure order, and that his superiors had decided where to post the notice. We find no clearly established law requiring the officer to second-guess his superiors' judgment regarding the proper place of posting.

---

[4]     Plaintiffs argue that defendant's act of checking the posting after the seizure indicates that he did not know whether the order was properly posted when he seized them. The uncontradicted summary judgment evidence shows, however, that before the date of seizure, defendant understood that the order was posted at the entrance to the hot springs. See R. I, doc. 34, ex. B.

Plaintiffs also argue that defendant lacked probable cause to order them out of the hot spring, thereby effecting an unlawful search. We conclude that defendant's order was proper, either as a search or as an order incidental to the seizure. Based on the information available, defendant had probable cause to believe both that plaintiffs had been publicly nude, and that a search would reveal evidence of plaintiffs' nudity. See Franz, 997 F.2d at 787-88.

## II. Reasonableness of Seizure and Search

Plaintiffs argue that defendant's order to exit the hot springs in his presence, under threat of incarceration, was unreasonable, in light of the nature of the offense and the limited risk that they were carrying weapons or contraband. They argue also that defendant searched them in an unreasonable manner by staring at their breasts and genitals while they dressed.

The reasonableness of a seizure or a search receives special scrutiny when a suspect's constitutional right to bodily privacy is implicated. See, e.g., Whren v. United States, 116 S. Ct. 1769, 1776 (1996) (explaining that while probable cause generally renders searches and seizures reasonable, special balancing analysis needed when seizure or search is "conducted in an extraordinary manner, unusually harmful to an individual's privacy or . . . physical interests"); Cottrell

v. Kaysville City, 994 F.2d 730, 734 (10th Cir. 1993) (weighing need for strip search against "grave invasion of privacy it entails").

We begin by analyzing whether defendant's order to exit the hot spring, in itself, exceeded the bounds of reasonableness. A temporary seizure carries with it authority to order the detained individuals to move from a particular area, if reasonably necessary. See, e.g., Maryland v. Wilson, 117 S. Ct. 882, 885-86 (1997) (holding that officer making a traffic stop may, as a matter of course, order passengers to exit vehicle pending completion of stop). The reasonableness of such an intrusion "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." Id. at 885 (quotations omitted).

Here, the public interest in effecting plaintiffs' seizure justified defendant's order in several respects. To issue plaintiffs a violation notice or a warning, defendant was required to return to his truck, parked out of sight, approximately one hundred yards away. See R. I, doc. 31, ex. E, pp. 26-27, ex. O, p. 48. Thus the order to exit the water prevented any potential escape of the suspects, by requiring them to accompany defendant to his vehicle. Defendant's order also facilitated plaintiffs' seizure by enabling them to produce identification, and by allowing completion of the citation procedure in a dry environment. Finally,

defendant's order prevented the possibility of future exposure of plaintiffs' nudity to any unsuspecting visitors.

Balanced against these public interests is the additional intrusion into plaintiffs' privacy occasioned by defendant's order. Although the intrusion was certainly greater than that experienced by the passengers in Wilson, it was minimized by the officer's act of turning his back to allow plaintiffs to exit the water and get dressed. See R. I, doc. 31, ex. N at 56, ex. O at 46-47; doc. 34, ex. C, p. 36. Further, as defendant had probable cause to search plaintiffs, the requirement that they expose themselves did not intrude on a reasonable expectation of privacy. Under these circumstances, defendant's order that plaintiffs exit the water was not unreasonable.

We conclude also that the manner in which the seizure was conducted was reasonable. A detention "may be unreasonable if it is unnecessarily painful, degrading, or prolonged, or if it involves an undue invasion of privacy." Franklin, 31 F.3d at 876. Such an unreasonable detention was found in Franklin, when officers removed a gravely ill man, who was not a suspect, from his bed, and required him to sit handcuffed for two hours, with his genitals exposed to twenty-three armed officers. Id. at 876-77. In contrast, the court in Crosby v. Hare, 932 F. Supp. 490, 494-95 (W.D.N.Y. 1996), found no constitutional violation when plaintiff was required to remain in a bathroom, naked, under the

supervision of a female officer but within view of male officers, until a protective sweep of the house was completed. The court relied on the fact that the detention was of short duration, that the detainee was somewhat shielded from public view, that she was suspected of committing the crimes underlying the search of the residence, and that she was not made to strip but merely to remain naked until the sweep was completed. Id. at 495.

The facts of this case are much closer to those in Crosby. Although defendant's conduct required plaintiffs to expose themselves, he did not require them to strip, as they were already naked. Because plaintiffs were permitted to dress immediately, the length of their exposure was minimal. Further, unlike the detainee in Franklin, plaintiffs were not innocent bystanders, but were suspected of the criminal activity that precipitated their detention. The degree of intrusiveness into plaintiffs' privacy was also minimized by defendant's act of turning his back. Finally, defendant's threat of incarceration occurred only after plaintiffs refused to provide identification or cooperate with the officer. See R. I, doc. 31, exs. J, K & O. This threat was not unreasonable. See United States v. Buehler, 793 F. Supp. 971, 975-76 (E.D. Wash. 1992) (holding fisherman who refused to provide identification was guilty of interfering with park ranger's authority to issue citation). We conclude on this record that plaintiffs were not seized in an unreasonable manner.

Similarly, we conclude that any search conducted by defendant was not performed in an unconstitutional manner. A search may be unreasonable if the privacy invasion outweighs the need for the search, considering "the scope of the intrusion, the manner in which it was conducted, the justification for initiating the search, and finally, the place where the search took place." Cottrell, 994 F.2d at 734. Here, justification for initiating a search was present: defendant had a "clear indication" that plaintiffs were nude and that their nudity would be quickly and accurately revealed upon exiting the water, and further, that it would be difficult to prove their nudity by other means. See Winston v. Lee, 470 U.S. 753, 762-63 (1985) (analyzing strength of state interest to determine if search justified). Moreover, the manner in which the search was conducted, the place where it occurred, and its scope, were minimally intrusive.[5]

---

[5] Although plaintiffs allege that defendant stared at their breasts and genitals, the summary judgment evidence shows only that defendant viewed the breasts of one of the women when he turned around before she finished dressing. See R. I, doc. 31, ex. N (testimony by plaintiff Lukas that she was dressed when defendant turned around), ex. O, p. 47 (testimony by plaintiff Truett that defendant turned his back before plaintiffs exited water, and that when he turned around prematurely she was not wearing a top). In light of the undisputed evidence that defendant again turned around to permit plaintiffs to finish dressing, we conclude no factual issue was created as to the reasonableness of the manner in which defendant conducted the search.

III. Additional Privacy Claims

Plaintiffs also appear to argue that because the hot springs were secluded, they were "private," and that defendant invaded their privacy by approaching and seizing them. They argue that they had a legitimate expectation that their privacy would not be disturbed by someone requiring them to exit the water and expose their nudity, based on many years of using the hot spring as a "clothing optional" bathing area. Plaintiffs were not bathing in a private place, however, but on public land, in a recreational area open to the general public.

Finally, plaintiffs Beall and Lukas, who work as seasonal employees for the Forest Service, argue that their privacy rights were violated by defendant's act of informing other Forest Service employees that plaintiffs had been issued a warning for being publicly nude. Plaintiffs did not, however, have a constitutionally protected privacy interest in such information. See Nilson v. Layton City, 45 F.3d 369, 372 (10th Cir. 1995) ("[G]overnment disclosures of arrest records, judicial proceedings, and information contained in police reports, do not implicate the right to privacy") (citations omitted).

The judgment is AFFIRMED. The mandate shall issue forthwith.

Entered for the Court

Carlos F. Lucero
Circuit Judge

-15-