[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 6, 2007
THOMAS K. KAHN
CLERK

No. 06-14556

D. C. Docket No. 06-00018 CR-5-RS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEVEN WAYNE HAUN,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Florida

**(August 6, 2007)**

Before DUBINA and BLACK, Circuit Judges, and RESTANI,* Judge.

DUBINA, Circuit Judge:

_____

*Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

Appellant Steven Wayne Haun ("Haun") appeals the district court's order denying his post-conviction Motion for Judgment of Acquittal and his Motion for New Trial. The district court found Haun guilty of violating 14 U.S.C. § 88(c) (2006), which makes it a felony for an individual to "knowingly and willfully communicate[] a false distress message to the Coast Guard or cause[] the Coast Guard to attempt to save lives and property when no help is needed." § 88(c). Haun argues on appeal that the district court erred in denying his motions because the Government did not prove specific intent. Because we conclude that the statute defines a general intent crime, we affirm the district court's order denying Haun's motions.

## I. BACKGROUND

The trial testimony revealed the following facts. Haun invited April Foley ("Foley"), Kathryn Gross ("Gross"), Steven Liford ("Liford"), and Tina Dodge ("Dodge")[1] on a late night/early morning excursion on his boat in the bay in Panama City, Florida. Foley and Gross both testified that they had met Haun before this date, but Liford stated that he met Haun for the first time that evening. After the individuals boarded the boat, Haun asked for their cell phones. Only Gross responded that she had a cell phone, and Haun told her that he would put it

_____

[1] Dodge did not testify at Haun's trial.

2

in the glove box to keep it dry. Haun drove the boat for several hours and then passed command to Liford so he could pull Haun on a raft. Foley, Gross, and Liford saw Haun zip and snap his life jacket before he got on the raft. Haun asked Liford to motor out of the bay into the Gulf of Mexico and go from one red buoy to another at 25 miles per hour. Because it was night and the tow line was about 140 feet in length, they could not see Haun on the raft. Not long after Liford began pulling Haun on the raft, Foley and Gross asked Liford to cut the motor because they feared that Haun was no longer on the raft. Liford cut the motor, and the passengers discovered that Haun was not on the raft. They began motoring around looking for him and found his life vest floating in the water, unzipped and unhooked.

When they realized Haun was missing, the passengers searched for the cell phone. They did not find the phone where Haun told them he would put it, but instead, they eventually found the phone turned off, wrapped in a towel, and stuffed in a beverage holder. Utilizing the cell phone, Foley communicated a distress call to the Coast Guard on Haun's behalf. Petty Officer Jeffrey Dunn ("Dunn"), United States Coast Guard, received the distress call. The Coast Guard began its search at 4:56 a.m. and returned to base from the search at 4:50 p.m.. According to Dunn, the Florida Fish and Wildlife Department ("FFWD") and the

3

Coast Guard work together on missing person searches in the water because they are the only two water bound agencies. Neal G. Goss III ("Goss"), an investigator with the FFWD, was involved in the Haun search. Goss testified that when he spoke with Haun's father about Haun's disappearance, the father was very much at ease and did not seem upset.

In October 2002, an officer with the Indiana State Police found Haun in a sleeper berth of an eighteen-wheeler in an excavation lot in Indianapolis. Authorities arrested Haun on October 25, 2002. Eric Wayne Daniel ("Daniel"), special agent with the Coast Guard Investigative Service, interviewed Haun after his arrest. Daniel notified Haun that he was suspected of the crime of federal false distress. Haun told Daniel that he (Haun) had spoken with a reporter earlier in the day and gave the reporter a false account of what happened. Haun gave Daniel an accurate accounting of what happened: he left a jet ski out on an island earlier in the day; as soon as the boat started moving, he let go, took off his life jacket, swam to the jet ski and rode back to the marina; he then briefly visited with his girlfriend before he left town. Haun mentioned to Daniel that he was never in distress while he was in the water.

The Government filed a superseding indictment alleging that Haun had knowingly and willfully caused the Coast Guard to attempt to save his life and

property when no help was needed, in violation of 14 U.S.C. § 88(c). Haun filed a waiver of his right to a jury trial and requested a bench trial, to which the Government consented and the district court approved. After a bench trial, the district court found Haun guilty. Haun renewed his Motion for Judgment of Acquittal, arguing that the Government's proof at trial was insufficient to prove that he intended to cause the Coast Guard to render unnecessary aid. Specifically, Haun contended that the Government established only that he intended to stage his disappearance prior to a state court date; the persons who called the authorities had no knowledge of his plan; a state agency contacted the Coast Guard for assistance in searching for him; and, as part of his disappearance, he did not intend for the Coast Guard to be notified nor did he know that the Coast Guard would be contacted. Haun also filed a Motion for New Trial on the same grounds. The Government opposed both motions, arguing that it proved that Haun had acted voluntarily, intentionally, and with the specific intent to do something that the law forbids. The district court summarily denied both motions, and Haun filed a notice of appeal.

## II. ISSUE

Whether the Government must prove specific intent in order to obtain a conviction under 14 U.S.C. § 88(c).

5

## III. STANDARD OF REVIEW

This court reviews *de novo* the district court's interpretation of a statute. *United States v. Searcy*, 418 F.3d 1193, 1195 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 1107 (2006).

## IV.  DISCUSSION

Because this case poses an issue of first impression for our circuit, we must navigate uncharted waters in interpreting the statute at issue.  This circuit has decided only one case under 14 U.S.C. § 88(c), holding that, subject to another provision of the statute, an individual who is guilty of knowingly communicating a false distress message to the Coast Guard will be liable for all costs incurred as a result.  *See United States v. James*, 986 F.2d 441, 444 (11th Cir. 1993).  In that case, we stated that the defendant clearly violated the statute in sending out a false distress signal that set into motion a series of events aimed at securing his apprehension.  *Id.*  "In other words, *but for* James' actions, the Coast Guard would not have expended any resources on a search and rescue mission and subsequent apprehension."  *Id.* (emphasis in original).  In *James*, whether the defendant intended to call the Coast Guard was not at issue because the defendant was the one who placed the call.  *Id.*

Here, Haun urges this court to vacate his conviction and sentence because the Government did not prove specific intent; i.e., that he willfully or intentionally caused the Coast Guard to attempt to save his life when no help was needed. Haun contends that although he did stage his disappearance in order to avoid a state court appearance, he did not intend for anyone to contact the Coast Guard, and, in fact, such contact would have interfered with his plan. He claims that the statute requires that the Government prove that he willfully intended for the Coast Guard to be contacted, not that he willfully disobeyed or disregarded the law. Haun further states that the boat passengers did not contact the Coast Guard, rather, a state agency did. Thus, Haun asks this court to vacate his conviction because the Government only proved, at most, a general intent to act, and § 88(c) requires proof of specific intent.

In statutory interpretation cases, we are reminded that the language of the statutes that Congress enacts provides "the most reliable evidence of its intent." *United States v. Turkette*, 452 U.S. 576, 593, 101 S. Ct. 2524, 2534 (1981). Therefore, "we typically begin the task of statutory construction by focusing on the words that the drafters have chosen." *Holloway v. United States*, 526 U.S. 1, 6, 119 S. Ct. 966, 969 (1999). In so doing, we reference the plain meaning of the statute's language, relying on the words' "ordinary, contemporary, common

7

meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 314 (1979). We also consider "not only the bare meaning" of the critical word or phrase, "but also its placement and purpose in the statutory scheme." *Bailey v. United States*, 516 U.S. 137, 145, 116 S. Ct. 501, 506 (1995). "[T]he meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S. Ct. 570, 574 (1991). The court should "adopt that sense of the words which best harmonizes with the context, and promotes in the fullest manner the policy and objects of the legislature." *United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 396, 18 L. Ed. 830 (1867).

Haun posits that Congress' use of the word "willfully" in the statute at issue implies that the statute is a specific intent crime. The Supreme Court has stated that "willful . . . is a word of many meanings, and its construction [is] often influenced by its context." *Spies v. United States*, 317 U.S. 492, 497, 63 S. Ct. 364, 367 (1943). "As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.'" *Bryan v. United States*, 524 U.S. 184, 191 n.13, 118 S. Ct. 1939, 1945 n.13 (1998). "In other words, in order to establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Id.* at 191-92, 118 S. Ct. at 1945 (quotation and citation omitted); *see also* Modern Federal Jury

8

Instructions 3A.01, p. 3A-18 (1997), *cited in Bryan*, 524 U.S. at 191 n.13, 118 S. Ct. at 1945 n.13; Eleventh Circuit Pattern Jury Instructions (criminal) 9.1 (2003) (stating that "'willful'. . . means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is with bad purpose either to disobey or disregard the law").

Haun attempts to muddy the waters by arguing that the statute requires that the Government prove that he knew he was violating the specific law he was charged with violating. Criminal statutes, although they are to be strictly construed, "are not to be construed so strictly as to defeat the obvious intention of Congress. . . . The rule of common sense must be applied to the construction of criminal statutes, the same as others." *United States v. Bristol*, 473 F.2d 439, 442 (5th Cir. 1973) (quotation and citation omitted) (noting that it is difficult to "bootstrap" a specific intent requirement to a statute that has no common law basis);[2] *see also United States v. Meeker*, 527 F.2d 12, 14 (9th Cir. 1975) (reasoning that if Congress had intended to legislate a specific intent crime, the statute would have said "with the intent to"), *quoted in United States v. Grossman*, 131 F.3d 1449, 1452 (11th Cir. 1997).

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

The language of the House Committee Report discussing the bill that was later codified at 18 U.S.C. § 88(c) indicates that Congress wanted to penalize not only those who directly communicate a false distress message to the Coast Guard or direct someone to send a false distress message, but also those who indirectly, by their actions, cause the Coast Guard to attempt to save lives and property when no help is needed. *See* Liability for False Distress Calls, H.R. Rep. No. 101-684 (1990) ("The section applies to the broad category of all individual action that causes the Coast Guard to attempt to save lives and property. The section applies to the broad category of all action the Coast Guard takes in response to the individual."). Buoyed by our common sense,[3] which we do not throw overboard, we conclude that the purpose of the statute is to penalize those who cause the Coast Guard to become involved when no help is needed, regardless of whether the individual who precipitated the drama in the open seas knew with certainty that the Coast Guard would needlessly answer the distress call. Contrary to Haun's assertion, the use of the word "willfully" in the statute does not mean that

---

[3] *See Anderson v. Cagle's Inc.*, 488 F.3d 945, 955 (11th Cir. 2007) (relying upon a common sense understanding of the word used in the statute); *United States v. Poirier*, 321 F.3d 1024, 1029 (11th Cir. 2003) (giving common sense construction to indictment); *BellSouth Telecomm., Inc. v. MCImetro Access Transmission Serv., Inc.*, 317 F.3d 1270, 1274 (11th Cir. 2003) (relying on common sense reading of the statute to conclude that the authority to approve or reject agreements carries with it the authority to interpret agreements that have already been approved); *United States v. Zheng*, 306 F.3d 1080, 1085-86 (11th Cir. 2002) (looking to common sense and other sources to aid in the interpretation of terms in a statute).

the Government must prove specific intent in order to obtain a conviction. *See Meeker*, 527 F.2d at 14. We conclude that the statute defines a general intent crime.

The evidence demonstrates that Haun devised and executed an elaborate scheme to fake his disappearance to avoid an impending court date, and this scheme caused the Coast Guard to undertake a needless search for him. Haun hid a jet ski on an island to serve as his "getaway" transport and duped several acquaintances into being unwitting witnesses to his "disappearance" at sea. Haun's actions were neither accidental nor mistaken; they were done knowingly and intentionally and with a bad purpose either to disobey or disregard the law. Haun acted willfully because he acted with knowledge that his conduct was unlawful. It was these calculated actions that caused the Coast Guard to attempt to save his life when he, by his own admission to the investigator, was not in distress. It defies logic to think that Haun did not believe his acquaintances would call some rescuing authority when they realized that Haun was not on the raft and might be lost at sea. Moreover, in order for Haun's disappearance scheme to be successful, he needed his disappearance to be reported and confirmed by some authority.

## V. CONCLUSION

11

We conclude that 14 U.S.C. § 88(c) does not include a specific intent requirement. The Government met its burden of proof in this case that Haun knowingly and willfully caused the Coast Guard to undertake a needless search. A contrary decision would defy common sense and nullify the intent and objective of Congress. Accordingly, for the foregoing reasons, we affirm the district court's denial of Haun's Motions for Judgment of Acquittal and New Trial.

AFFIRMED.