[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12660
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cr-00074-LC-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AYLA MARIE MENDOZA,
a.k.a. Ayla Cates,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(September 30, 2016)

Before HULL, MARCUS, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Ayla Mendoza appeals her conviction following her conditional guilty plea to aiding and abetting the possession of firearms by an alien unlawfully in the United States, in violation of 18 U.S.C. §§ 922(g)(5)(A), 924(a)(2) and 2. Defendant's conditional plea permitted her to appeal the issues raised in this appeal: (1) the district court's denial of her motion to suppress evidence seized from her home and her subsequent statements made to law enforcement and (2) the district court's pre-trial ruling denying Defendant's request for a jury instruction defining the term "willfulness." After careful review, we affirm the district court's ruling on both the suppression motion and the requested instruction.

## I.  BACKGROUND[1]

On August 6, 2014, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") received an anonymous tip that an illegal alien named Luis Mendoza ("Luis") was in possession of firearms. The tip included photos from Defendant's Facebook account, which showed Luis posing with a Smith & Wesson M&P rifle and a shotgun. ATF agents later confirmed that Defendant had purchased those firearms at a nearby Walmart.

After confirming the anonymous tip, ATF Special Agent Brent Carrier and two other detectives, Detective Kilburn and Detective Conkell, went to

---

[1] The following facts are taken from the testimony at the suppression hearing, viewed in the light most favorable to the Government. *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008).

2

Defendant's residence to conduct an interview. When Defendant answered the door, Agent Carrier identified himself and explained that he needed to speak with her about an ongoing investigation. Defendant invited Agent Carrier and Detective Kilburn inside.

Once inside the residence, Agent Carrier told Defendant that the ATF Pensacola Office had received an anonymous tip that Luis was in possession of firearms. Defendant told Agent Carrier and the detective that she and Luis were married and resided together at the residence. She knew that Luis was residing in the United States illegally, and she admitted that she had purchased two firearms from Walmart. She told Agent Carrier that the firearms were inside the residence.

Defendant also told Agent Carrier that she had purchased the firearms because Luis could not do so. Given Defendant's admission that she had made a straw purchase as to these firearms, Agent Carrier informed Defendant that the agent could not leave the residence without the firearms. Agent Carrier asked Defendant where the firearms were located, and Defendant escorted him to the back bedroom. Defendant then informed Agent Carrier that the firearms were on the top shelf of the walk-in closet. She also told Agent Carrier that there was ammunition in the nightstand. After obtaining Defendant's permission, Agent Carrier searched the rest of the bedroom for firearms and ammunition, but did not

3

open anything that was closed. He was not able to find the ammunition because the nightstand was locked and only Luis had the key.

At this point, Defendant called Luis. Agent Carrier told Defendant to inform Luis that he was not arresting anyone that day, and that he just wanted to speak to Luis. When Defendant handed Agent Carrier the phone, he told Luis that he was taking the firearms because they were part of a crime. Luis said that he had already told Defendant to hand over the firearms.

Agent Carrier told Luis that he would come back to retrieve the ammunition from the nightstand when Luis returned home. Agent Carrier never told Defendant that she would not be charged if she handed over the firearms, nor did he ever show her his gun. When Defendant later called to inform Agent Carrier that Luis had returned home, Agent Carrier and the two detectives went back to the residence. When they arrived, Luis was outside and he invited Agent Carrier and the detectives inside.

Agent Carrier then interviewed Luis and Defendant. During the interview, Luis told Agent Carrier that he had illegally entered the United States ten years earlier. Defendant also stated that she had purchased the firearms for the family. At the conclusion of the interview, Luis and Agent Carrier retrieved the ammunition from the nightstand. Around the same time, Agent Carrier told Luis and Defendant that he did not know if they would be charged. He also told Luis

4

and Defendant that he had concluded his investigation, and that the United States Attorney's Office would make the ultimate determination about whether or not to prosecute.

Shortly after this visit to the residence, Detective Kilburn again contacted Defendant and told her that he needed to return in order to retrieve Luis's passport and the shell casings that Detective Kilburn and Agent Carrier had seen in the backyard during their visit. When Detective Kilburn arrived at the residence, she gave him Luis's passport as well as permission to retrieve the shell casings.

A federal grand jury subsequently returned an indictment charging Defendant with aiding and abetting an illegal alien, namely Luis, to knowingly possess a firearm, in violation of 18 U.S.C. §§ 922(g)(5)(A), 924(a)(2), and 2.

Before trial, Defendant moved to suppress the firearms seized from her home and the statements she made to law enforcement because she argued that her consent to the warrantless search of her home was not knowing and voluntary. She further argued that Agent Carrier never advised her of her *Miranda*[2] rights prior to or after her statements to law enforcement. The district court denied the motion, finding that based on the credibility of the witnesses, Defendant's surrender of the firearms and the entry into the home were voluntary and consensual, and Defendant's statements were not coerced in any way.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

In anticipation of trial, both the Government and Defendant requested that the district court settle their dispute as to which instructions should be given to the jury. At bottom, the dispute focused on whether the Government had to prove that, in aiding and abetting her husband (who, as an illegal alien, could not legally possess a firearm), Defendant acted willfully, as opposed to just knowingly. The Government's position was that it did not have to prove willfulness, but only that Defendant acted knowingly.

Specifically of pertinence to this appeal, Defendant requested that the district court give the standard instructions explaining aiding and abetting and defining both the terms "knowingly" and "willfully," as well as a special instruction concerning the good faith defense.[3] The Government concurred that the pattern instruction on aiding and abetting should be given. But it disagreed that the good faith defense instruction should be given. And, of significance to the narrow issue on appeal here, the Government contended that the district court should decline to instruct the jury on the term "willfulness," but instead should define for them only the term "knowingly."

---

[3] These instructions are numbered respectively: Eleventh Circuit Pattern Jury Instructions (Criminal Cases) (2010), Special Instruction 7 ("Aiding and Abetting"); Basic Instruction 9.1A ("On or About; Knowingly; Willfully-Generally") or 9.1B ("On or About; Knowingly: Willfully-Intentional Violation of a Known Legal Duty"); Special Instruction 9 ("Good Faith Defense to Willfulness").

6

The district court agreed with the position taken by the Government, meaning that it ruled that it would decline to define for the jury the term "willfulness" or to instruct them that Defendant had a good-faith defense to the charge. Immediately after the district court's ruling, Defendant entered a plea of guilty to aiding and abetting an illegal alien to knowingly possess a firearm, but conditioned that plea on her ability to appeal the district court's adverse rulings on the instruction issue and the suppression motion. The district court subsequently sentenced Defendant to one day of probation with credit for time served. Defendant now appeals.

## II. DISCUSSION

### A.    Motion to Suppress

We review a district court's ruling on a motion to suppress as a mixed question of law and fact, reviewing factual findings for clear error and the district court's application of the law to those facts *de novo*. *United States v. Timmann*, 741 F.3d 1170, 1177 (11th Cir. 2013). We construe the facts in the light most favorable to the prevailing party, which in this case was the Government. *United States v. Sparks*, 806 F.3d 1323, 1334 (11th Cir. 2015). We also defer to the district court's credibility determinations, unless the determination is "contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable

7

factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "Of all the places that can be searched by the police, one's home is the most sacrosanct, and receives the greatest Fourth Amendment protection." *United States v. McGough*, 412 F.3d 1232, 1236 (11th Cir. 2005).

The general prohibition against the warrantless search of a person's home is not applicable when a person consents to a search of the home. *See Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Whether the defendant voluntarily consented to a search is determined by the totality of the circumstances. *United States v. Drayton*, 536 U.S. 194, 206–07 (2002); *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989). The burden is on the Government to demonstrate that consent was voluntarily given and was not the product of duress or coercion. *United States v. Yeary*, 740 F.3d 569, 581 (11th Cir. 2014). "A district court's determination that consent was voluntary is a finding of fact, that will not be disturbed on appeal absent clear error." *Id.* (quotations omitted).

Defendant argues that Agent Carrier entered her home without a warrant, and that her agreement to turn over the firearms was not voluntary. We conclude

8

that the district court did not clearly err in finding that Defendant voluntarily consented to the entry into her home and the seizure of the firearms. Agent Carrier testified that Defendant invited him and Detective Kilburn into her home and cooperated with their investigation and search efforts. She led Agent Carrier to the firearms in the back bedroom, permitted Agent Carrier to search the rest of the bedroom for firearms, and called Agent Carrier when Luis returned home with the key to unlock the nightstand where the ammunition was located. *See Ramirez-Chilel*, 289 F.3d at 752 (indicating that the extent of an individual's cooperation with law enforcement is a factor to consider when determining whether the individual's consent was coerced).

Defendant asserts that her consent was not voluntary because she was given two choices: cooperate or go to jail. However, both she and Agent Carrier described both of his visits to her home as friendly and/or casual encounters. Moreover, Agent Carrier and the detectives identified themselves when they arrived at Defendant's home and explained the purpose of their visit. Although Agent Carrier and the two detectives were armed, none of them brandished their guns nor were their guns visible. And, while Defendant testified that she would not have consented if she had known she did not have to, this knowledge was not necessary for the Government to meet its burden of showing that Defendant's consent was voluntary. *See United States v. Zapata*, 180 F.3d 1237, 1242 (11th

9

Cir. 1999) (stating that the failure to inform the defendant of the right to refuse consent to a search does not invalidate otherwise valid consent).

The district court also determined that Agent Carrier and Detective Kilburn's testimony that Defendant consented was more credible than Defendant's testimony that her consent was not voluntarily given. We defer to that credibility determination because Defendant has not shown that the district court's findings were "contrary to the laws of nature, or [are] so inconsistent or improbable on [their] face that no reasonable factfinder could accept [them]." *Ramirez-Chilel*, 289 F.3d at 749.

The district court also did not err by denying Defendant's motion to suppress the statements she made to Agent Carrier and the detectives. The district court found Agent Carrier's testimony—that he did not tell Defendant that she would not be charged if she cooperated—more credible than Defendant's testimony to the contrary. Because Defendant has not shown that this factual finding is so inconsistent that no reasonable factfinder would accept it, we defer to that determination. *See Ramirez-Chilel*, 289 F.3d at 749. We also reject Defendant's argument that her statements based on the purported illegally-seized firearms should have been suppressed as fruit of the poisonous tree. Given that the initial search of the home and seizure of the firearms were not unlawful, Defendant's later statement cannot be fruit of the poisonous tree. *See United States v. Lopez-*

10

*Garcia*, 565 F.3d 1306, 1315 (11th Cir. 2009) (concluding that defendant's argument that statements he made after he was initially stopped and arrested were not fruit of the poisonous tree because his initial seizure and arrest were not unconstitutional).  Considering the totality of the circumstances, the district court did not clearly err in finding that Defendant's acquiescence to the seizure of the firearms and subsequent statements to law enforcement were voluntary, and thus, the district court did not err in denying her motion to suppress.

## B.    Jury Instructions

Defendant also argues that the district court erred in its pre-trial ruling denying her request that the jury be instructed as to the definition of willfulness. Because Defendant entered a conditional plea of guilty reserving her right to challenge the court's ruling, we consider that ruling, as much as we can, in the same way as if Defendant had proceeded to trial and the district court had instructed a jury consistent with the pre-trial ruling.  We review a district court's denial of a requested jury instruction for abuse of discretion.  *United States v. Gomez*, 164 F.3d 1354, 1356 (11th Cir. 1999).  The district court's failure to give a requested jury instruction only constitutes reversible error if the instruction:  "(1) was correct, (2) was not substantially covered by a charge actually given, and (3) dealt with some point in the trial so important that failure to give the requested

instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Dohan*, 508 F.3d 989, 993 (11th Cir. 2007).

As noted, Defendant entered a conditional plea of guilty to aiding and abetting an illegal alien to knowingly possess firearms, in violation of 18 U.S.C. §§ 922(g)(5)(A), 924(a)(2) and 2.  Under § 922(g)(5)(A), it is a crime for an illegal alien "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g)(5).  The penalty section of the chapter provides that "[w]hoever *knowingly* violates" various subsections of section 922, including subsection (g), shall be fined as provided in this title, imprisoned not more than 10 years, or both.  18 U.S.C. § 924(a)(2) (emphasis added).

As to 18 U.S.C. § 2, which sets out the offense of aiding and abetting, the latter provides:

(a) Whoever commits an offense against the United States or *aids, abets, counsels, commands, induces or procures* its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

(emphasis added).  The indictment mimicked the language set out in § 2(a); that is, it charged Defendant with aiding, abetting, counseling, commanding, inducing, and

12

procuring the commission of a criminal offense.  The indictment did not charge Defendant with § 2(b), which requires that Defendant "willfully cause an act to be done," that is, "willfully cause the offense to be committed."

Prior to the Defendant's entry of a plea of guilty, and in anticipation of a trial, the parties requested the district court to give particular instructions to the jury.  As set out above, both parties agreed that the standard aiding and abetting instruction should be given, which of course made sense because that is the offense Defendant was charged with.  Defendant's possession of two firearms, by itself, violated no federal law.  Rather, it was her husband's possession of the firearms that was unlawful, because he was in the country illegally and federal law prohibits an illegal alien from possessing a firearm.  And because Defendant provided her husband with these firearms, her conduct in doing so rendered her vulnerable to a potential charge of aiding and abetting her husband in committing this criminal offense.

The parties agreed on the need to give an aiding and abetting instruction. The instruction reads:

> Aiding and Abetting; Agency.  It's possible to prove the Defendant guilty of a crime even without evidence that the Defendant personally performed every act charged.
>
> Ordinarily, any act a person can do may be done by directing another person, or "agent."  Or it may be done by acting with our under the direction of others.

13

A Defendant "aids and abets" a person *if the Defendant intentionally joins with the person to commit a crime*.

A Defendant is criminally responsible for the acts of another person if the Defendant aids and abets the other person. A Defendant is also responsible if the Defendant willfully directs or authorizes the acts of an agent, employee, or other associate.

*But finding that a Defendant is criminally responsible for the acts of another person requires proof that the Defendant intentionally associated with or participated in the crime – not just proof that the Defendant was simply present at the scene of a crime or knew about it.*

In other words, you must find beyond a reasonable doubt that the Defendant was a willful participant and not merely a knowing spectator.

(emphasis added).

Again, Defendant was charged with aiding and abetting her husband in a violation of § 922(g)(5). The above instruction sets out the mental state that must be proved to convict of a person of aiding and abetting a criminal offense, generally. Specifically, the instruction explains that a defendant aids and abets the commission of a crime if "the Defendant "intentionally joins with [another] person to commit [the] crime." Stated another way, to find a defendant "criminally responsible for the acts of another person requires proof that the Defendant intentionally associated with or participated in the crime…." In contrast, as the instruction explains, it is insufficient to prove only that "the Defendant was simply present" or that she happened to "[know] about" the crime. In summarizing all of

14

the above, the instruction concludes by requiring the jury to find that "the Defendant was a willful participant and not merely a knowing spectator." Translated, an aider and abetter is a "willful participant" if she has *intentionally* joined in, associated with another person, or participated in the commission of the crime.

The district court agreed to give the above instruction, but Defendant asked the court to go further and to give an additional, and wholly separate, instruction defining the term "willfulness." Defendant asked the court to give either the version of the willfulness instruction that calls for proof that the accused acted with a bad purpose, albeit without any awareness of a specific law that the conduct violated (Basic Instruction 9.1A (2010)), or the iteration that actually calls for awareness that one is violating a particular law (Basic Instruction 9.1B (2010)).

The district court declined to do so, and, for several reasons, we find no error.

First, a § 922(g)(5) offense is not a specific intent crime. [4] A person can be convicted, as a principal, of being a felon in possession of a firearm under

---

[4] Section 922(g)(5) states:

(g) It shall be unlawful for any person—
   * * *
   (5) who, being an alien . . . illegally or unlawfully in the United States . . . to . . . possess in or affecting commerce, any firearm or ammunition.

18 U.S.C. § 922(g)(5).

15

§ 922(g)(5) without any proof that the individual acted willfully; that is, without proving that the defendant acted with a bad purpose to do something in disregard of the law. *See United States v. Jones*, 143 F.3d 1417, 1419 (11th Cir. 1998) ("The crime of being a felon in possession of a firearm is easily understood. Possession alone is sufficient. The crime does not require any specific intent."); *United States v. Haun*, 494 F.3d 1006, 1010 (11th Cir. 2007) (indicating that "if Congress had intended to legislate a specific intent crime, the statute would have said 'with the intent to.'" (quoting *United States v. Meeker*, 527 F.2d 12, 14 (9th Cir. 1975)).

Second, the paragraph of 18 U.S.C. § 2 used to charge Defendant with aiding and abetting was § 2(a), not § 2(b). And it is only § 2(b) that requires that a defendant "willfully" do something; that is, "willfully cause[]" another to commit an offense against the United States. Thus, § 2(a) did not require the Government to prove that Defendant acted with any bad purpose in aiding and abetting her husband. Rather, it only had to prove that Defendant's husband was an illegal alien who possessed a firearm (which is a crime) and that Defendant aided and abetted her husband in that endeavor, which she clearly did. Indeed, Defendant admitted that she acquired two guns for her husband and that she gave him the guns, knowing that he was an illegal alien. By her own admission, Defendant intentionally aided and abetted her husband, rendering her, in the parlance of the aiding and abetting instruction, a willful participant.

16

For the above reasons, including the type of crime at issue and Defendant's admitted facts here, we conclude that Defendant has shown no reversible error as to the Court's exercise of discretion in declining to give the "willfulness" charge requested by Defendant.  Accordingly, we **AFFIRM** the district court's rulings on both the suppression motion and the jury instruction.